[Civ. No. 20425. Third Dist. Sept. 17, 1981.]

NEWBERY ELECTRIC CORPORATION, Plaintiff and
Appellant, v.
OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,
Defendant and Respondent;
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,
Real Party in Interest and Respondent.

COUNSEL

Millikan & Hardy, C. E. Millikan, Holliday & Peterson and Robert D. Peterson for Plaintiff and Appellant.

Linda Clevenger, Elise Manders, Keith Yamanaka and Robert A. Heron for Defendant and Respondent.

Michael D. Mason, Pamela White McCollum and Alison Colgan for Real Party in Interest and Respondent.

OPINION

CARR, J.—Newbery Electric Corporation (Newbery) appeals from a judgment denying its petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5.) to compel respondent Occupational Safety and Health Appeals Board (Board) to vacate its order granting a petition for reconsideration. The core of this action is a citation issued by the Division of Occupational Safety and Health (Division) charging Newbery with a serious violation of safety regulations. On appeal, Newbery contends (1) the Board was without jurisdiction to grant the peti-

tion for reconsideration as the Board failed to take action on the petition within the requisite statutory period, and (2) the Board's decision on reconsideration upholding the citation charging a serious violation is not supported by substantial evidence.[1]

On June 24, 1977, Dan Kane, an electrician employed by Newbery, arrived at his assigned work site to complete the relocation of a street light on a public street. The concrete base for the street light had previously been installed directly under a three-wire overhead high voltage power line, a site designated by Southern California Edison, the customer for whom the street lights were being installed. Newbery called to Edison's attention that the base was situated directly under the high voltage lines and the top of the light pole would be near such voltage lines. Further instructions on how to deal with the danger were requested from Edison.[2] New written instructions on the pole location were issued by Edison and delivered to Kane. These instructions directed Kane to install a new base (and the light pole) 15 feet south of the original base. The new location as designated cleared the high voltage lines by more than 10 feet, the legally required safe zone or distance. Inexplicably, Kane did not comply with the written instructions. Instead, he installed a new base only seven to nine feet away from the original base, a position placing the light pole slightly over four feet from the high voltage lines, instead of ten feet as required. After the concrete for the new base was cured and ready for the pole, Kane and Juan Granados (an equipment operator working with Kane but employed by another company) erected the light pole on the incorrectly relocated base. Granados questioned Kane about the new location as it was within 10 feet of the power lines; Kane replied the high voltage wire nearest to the pole was neutral. In point of fact, that line was not neutral, but a 12,000 volt phase conductor. Kane lost his footing while guiding the bottom of the pole, causing the light pole to swing. Because the pole was being installed 4 feet from the high voltage lines instead of 10 feet, the projecting light arm of the upper end of the pole made contact with the high voltage wire, breaking the wire which fell on Kane, electrocuting him.

---

[1] We summarily reject Newbery's assertion that the petition for reconsideration was not timely filed. (See Lab. Code, §§ 6610, 6614; Code Civ. Proc., § 1013, subd. (a).)

[2] Title 8, California Administrative Code, section 2946, subdivision (a), prohibits any employer from requiring or permitting an employee to perform any function in proximity to high voltage lines, or to erect any equipment near said lines unless guarded from the danger of accidental conduct. Proximity for a 12,000 volt line, phase to phase, is defined as within 10 feet. (See also Cal. Admin. Code, tit. 8, § 2946, subd. (d), and table 2.)

The Division conducted an investigation of the accident and cited Newbery for violation of a safety rule which prohibits work within 10 feet of energized high voltage lines. (See Lab. Code, §§ 6317, 6432.) A civil penalty of $500 was proposed. Newbery appealed and a hearing was held. The administrative law judge determined Kane's working within 10 feet of voltage lines was beyond the reasonable anticipation of Newbery and set aside the citation and the penalty. Division petitioned for reconsideration, which was subsequently granted by the Board. The Board reversed the decision of the administrative law judge, finding the accident was foreseeable and the citation against Newbery was reinstated. Newbery petitioned for writ of mandate in Sacramento Superior Court. The petition was denied and the decision of the Board upheld.

## I

█ The initial issue presented is whether the Board "acted" within its power and within the time limits imposed by Labor Code section 6624[3] when it issued an order taking the petition for reconsideration under submission and staying the decision of the administrative law judge.

Section 6624 provides: "A petition for reconsideration is deemed to have been denied by the appeals board unless it is *acted* upon within 30 days from the date of filing. The appeals board may, upon good cause being shown therefor, extend the time within which it may act upon such petition for not exceeding 30 days." (Italics added.) That the time limitations set forth in section 6624 are jurisdictional is not seriously questioned by the parties. (Cf. *United States Pipe & Foundry Co.* v. *Industrial Acc. Com.* (1962) 201 Cal.App.2d 545, 548-551 [20 Cal.Rptr. 395]; see *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633]; *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669, 674 [55 Cal.Rptr. 810]; see also 1 Witkin, Summary of Cal. Law (8th ed. 1980 pocket supp.) Agency and Employment, § 42B, p. 156.)

Division filed its petition for reconsideration on December 9, 1977, stating therein it would later file a supplemental petition for reconsideration. Newbery answered the petition on December 12, 1977. On December 22, 1977, the Board took the petition for reconsideration "under submission" and "stayed" the decision of the administrative law judge.

---

[3]Hereafter, all statutory references are to the Labor Code unless otherwise indicated.

Division filed its supplemental petition for reconsideration on November 22, 1978, and Newbery timely answered.

On February 29, 1980, two years and two months after the Division filed its petition for reconsideration, the Board granted the petition. On that same day, the Board issued its decision after reconsideration, finding that a serious violation had been established.

It is the position of the Board that taking a petition for reconsideration under submission and issuing a stay of the decision by the administrative law judge constitutes "action" on the petition within the meaning of section 6624.

Newbery asserts the Board's jurisdiction to grant reconsideration must be exercised within 30 days, or, at maximum 60 days from the date of filing the petition.

We are persuaded that Newbery's construction of section 6624 is too narrow and would result in a thwarting of the legislative purpose of meaningful review on reconsideration. Over two years does appear to be an inordinate length of time for a petition to be under submission. Moreover, the Board is empowered to implement the Labor Code provisions for reconsideration by adopting rules of practice and procedure setting reasonable time limits for granting or denying reconsideration or taking such other action as is authorized by sections 6620-6623.[4] However, to require the Board to act within 30 days of filing the petition or even 60 days would seriously impair the Board's ability to fully consider the petition and any response thereto. Section 6619, as amended in 1979, allows adverse parties 30 days from service of the petition within which to file an answer.[5] The Board's Rules of Practice and Procedure (tit. 8, Cal. Admin. Code, § 391 subdivision (b)) permit the filing of a supplemental petition within 30 days from the service of the record of the hearing before the administrative law judge and a supplemental answer thereto. The Board represents to this court that many requests to file supplemental pleadings are received and granted because the hearing record is not available during the 30-day period within which to file

---

[4]We are moved to observe that such power should be exercised to preclude future extended "submissions" and ensuing due process considerations.

[5]Section 6619, as originally enacted in 1973 and effective during the times in question in the instant case, allowed only 10 days to answer. Presumably, the amendment to allow 30 days was prompted by a finding that 10 days was insufficient time within which to file a meaningful response.

the petition for reconsideration and such record is often necessary to support the contentions contained in the petition. Under the present section 6619, if the Board acts on a petition within 30 days of filing, the response may not yet be filed; if it acts within 60 days, it will have only 25 days to review the petition and response, make a decision thereon and prepare and execute the written order required by section 6623.[6] Nor would the Board have the benefit of any supplemental pleadings specifying in greater detail record support for the respective party's positions.[7]

In the instant case, a supplemental petition was filed and answered. The initial petition was timely filed December 7, 1977, and answered; on November 22, 1978 (the record apparently having been served and/or filed in Oct. 1978), a supplemental petition was filed and answered. Under the circumstances present, we find the Board "acted upon" the petition for reconsideration by ordering it under submission and issuing a stay.

Workers' Compensation Appeals Board cases are cited by Newbery as parallel and controlling because section 5909, applicable to workers' compensation petitions for reconsideration, is identical in language to section 6624. But these cases simply do not deal with the precise narrow issue in this case. That issue is not whether the time limits set forth in section 6624 are jurisdictional. The issue is whether the action of the Board in ordering the petition to be taken under submission and issuance of a stay constitutes acting upon the petition within the meaning of section 6624.

In *Evans* v. *Workmen's Comp. Appeals Bd.* (1968) 68 Cal.2d 753 [68 Cal.Rptr. 825, 441 P.2d 633] and *Zozaya* v. *Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 464 [103 Cal.Rptr. 793], the order granting reconsideration and the decision following reconsideration

---

[6]Labor Code section 6623 provides as follows: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, or decision following reconsideration shall be made by the appeals board and not by a hearing officer and shall be in writing, signed by a majority of the appeals board members assigned thereto, and shall state the evidence relied upon and specify in detail the reasons for the decision."

[7]In its brief, the Board states it no longer engages in the practice of taking petitions for reconsideration under submission and issuing stays but grants or denies them within 30 days of filing. While we find this irreconcilable with the asserted policy of withholding a decision until all pleadings and the record are available, we assume the speedy new policy was engendered by this and similar actions.

were annulled for failure of the appeals board to state the evidence relied upon and to detail the reasons for its actions as required by section 5908.5.[8] In each case, however, the appeals board was found to have continuing jurisdiction for further proceedings by reason of its having acted within the requisite time period by granting reconsideration. Neither case posits that granting (or denying) consideration is the only jurisdiction-conferring action contemplated by section 5909.

Nor are the cases of *United States Pipe & Foundry Co.* v. *Industrial Acc. Com.* (1962) 201 Cal.App.2d 545 [20 Cal.Rptr. 395] and *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669 [55 Cal.Rptr. 810], which construe section 5900 relevant to a determination of the narrowly defined issue herein. Section 5900, subdivision (b) provides the appeals board (in workers' compensation cases) may, *on its own motion*, grant reconsideration within 60 days after the filing of an order, decision or award made by a referee.[9]

In *United States Pipe & Foundry Co., supra*, the appeals board was found to be without jurisdiction to grant reconsideration on its own motion when such action was not taken within the prescribed 60 days. In *Argonaut, supra*, the same principle was enunciated: the appeals board could not grant reconsideration on its own motion after the lapse of 60 days but it could, for good cause and upon written notice, reopen a proceeding pursuant to section 5803, which together with sections 5804 and 5410 grants continuing jurisdiction to amend, alter or rescind its orders to the appeals board for a period of 5 years from the date of injury. Section 5900, subdivision (b) requires an affirmative act by the appeals board within the prescribed period and that affirmative act is defined: it is the granting of reconsideration.[10]

Under section 6624 an affirmative act is required by the Board to confer jurisdiction for further proceedings. That act is not defined in the statute, which simply provides the petition for reconsideration must be "acted upon" within the prescribed time limits. We have determined the Board's action here constituted an "acting upon" the petition.

---

[8] A similar requirement for the board before us is found in section 6623.

[9] A similar provision is found in section 6614, subdivision (b) for the Board herein but the time limitation is 30 days.

[10] Of interest in noting divergence between workers' compensation and the California Occupational Safety and Health Act of 1973 is that section 5905 still provides 10 days for an answer to a petition for reconsideration for workers' compensation, whereas a 1979 amendment extended this period to 30 days under the latter act.

## II

■ The second issue presented is whether the decision of the Board, finding a serious violation of safety regulations had occurred, is supported by substantial evidence.

Division issued a citation charging Newbery with a violation of title 8, California Administrative Code section 2946, subdivision (a), which prohibits working within 10 feet of high voltage lines.[11] Newbery appealed; a hearing was conducted pursuant to sections 6600-6604; the administrative law judge determined the accident was unforeseeable and set aside the citation and proposed penalty. The Board vacated this decision and found: (1) Newbery knew or should have known where the pole installations were to be made and of the dangers that could be encountered by its employees; (2) Newbery failed to exercise any supervision over its employees to assure that appropriate action to prevent injury would be taken when exposure to high-voltage lines was to be encountered; (3) Newbery failed in its responsibility to ensure its safety rules were carried out by its employees; and (4) the violation was not unforeseeable, that the absence of strict enforcement of safety rules in view of the nature of the work being performed and the likelihood of employee exposure to high voltage lines could have been foreseen by Newbery. Newbery asserts these findings are not supported by substantial evidence. We agree.

There is no evidence to support the finding that Newbery failed to ensure that its safety rules were carried out. In the past, Newbery has received safety and responsibility awards. At present, Newbery has an ongoing safety program, complete with safety practices, and a printed safety operating code. As part of its safety program, Newbery requires its supervisors to learn all related safety rules and to teach such rules to their crews. (Cf. *Danco Const. Co.* v. *Occupational Safety & Health* (8th Cir. 1978) 586 F.2d 1243, 1245; *Brennan* v. *Butler Lime and Cement Company* (7th Cir. 1975) 520 F.2d 1011, 1014.) Evidence presented indicated that when safety rules or procedures were not followed, Newbery promptly issued verbal reprimands for all such nonserious violations. There was no evidence that any Newbery employee had ever committed a serious violation of any safety rule or procedure. Moreover, testimony at the hearing indicated that if any serious violation did occur, severe action would be taken, including the possibility of termi-

---

[11]See *ante*, footnote 2.

nating the employment of the Newbery employee who committed said violation.

The evidence likewise fails to support the finding that Newbery failed to adequately supervise the installation of the light poles. Certainly, Newbery knew or should have known the pole installation was near a high voltage line. However, Kane was not a novice electrician; he was an experienced electrician who acted in a supervisory capacity over his crew. (Cf. *Danco Const. Co.* v. *Occupational Safety & Health, supra,* 586 F.2d at pp. 1245, 1247.) Until the time of the accident, Kane had installed approximately 2,500 poles during the preceding 2 ½-year period. He was well versed in the 10-foot rule, and prior to the accident, had refused to install poles near high voltage lines.[12] Moreover, as a supervisory employee, Kane was required to participate in monthly tool box meetings; he often talked weekly about safety issues with his immediate supervisor. As his position of foreman required, he was responsible for and performed the task of informing his crew of the applicable safety regulations.

Newbery had every right to expect that Kane, an experienced employee who had previously set, as instructed, over 2,500 poles, would follow the written instructions directing him to set the pole 15 feet to the south of the original base in an area away from the high voltage lines. Kane knew the reason for constructing the second base was because the first base had been constructed too close to the overhead lines. Kane did not perform as instructed, but instead set the new base only seven to nine feet away from the original base.

Moreover, Newbery could reasonably expect its foreman to obey the safety regulation requiring observance of the 10-foot rule when working near high-voltage lines, particularly in view of his past refusal to install light poles in close proximity to high voltage lines. By all accounts, Kane was described as a responsible, safety conscious employee, with an exemplary safety record. He knew the safety rules, knew that only linemen were permitted to work in close proximity to high voltage lines, and knew he was within the 10-foot limit. For reasons unknown, he thought the outside line was neutral and commenced the work which led to his death. However unfortunate the accident, it cannot be said that Newbery knew or should have foreseen that Kane would not obey

---

[12]Aside from being a legal regulation, it was also a Newbery policy to not set poles within 10 feet of high voltage lines.

either the written instructions or the 10-foot rule with which he was familiar. The findings of the Board are without support in the record.

The judgment is reversed; the trial court is directed to issue a writ of administrative mandamus, ordering the Board to set aside the serious violation citation and the proposed penalty.

Puglia, P. J., and Blease, J., concurred.