[No. C004865. Third Dist. Aug. 11, 1989.]

C. E. BUGGY, INC., Plaintiff and Appellant, v.
OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,
Defendant and Respondent;
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, Real
Party in Interest and Respondent.

COUNSEL

Robert D. Peterson for Plaintiff and Appellant.

Patrick S. Berdge and Adolf Loeb for Defendant and Respondent.

John K. Van de Kamp, Attorney General, Robert F. Tyler and Edward P. Hollingshead, Deputy Attorneys General, for Real Party in Interest and Respondent.

OPINION

PUGLIA, P. J.—Plaintiff was cited by real party in interest Division of Occupational Safety and Health (Division) for two serious violations of employer safety provisions set forth in title 8 of the California Code of Regulations. Citation 1 was for violation of section 1635, subdivision (b)(7) (failure to secure metal decking); citation 2 was for violation of section 1635, subdivision (b)(14) (failure to provide safety belts and lines). Plaintiff's appeal of these citations was denied by an Administrative Law Judge (ALJ), the respondent Occupational Safety and Health Appeals Board (Board) upon a petition for reconsideration, and the trial court upon petition for writ of mandate.

On appeal from denial of the writ, plaintiff contends the regulations plaintiff was cited for violating are unconstitutionally vague and ambiguous. Plaintiff also contends there is no substantial evidence supporting the decision of the Board regarding either citation. We shall affirm.

Both citations were issued by Division engineer Phillip Barker as the result of a single incident. Plaintiff was the subcontractor installing metal decking for the floors of a building under construction. Two of plaintiff's employees were injured by a fall of 17 feet from the second story when an unsecured metal decking panel upon which they were standing gave way. At the time, Gruenewald, one of the injured employees, was attempting with an angle iron to move a bundle of metal decking panels in the open bay where he and the other injured employee were preparing to lay the decking.

Immediately prior to the accident, the two employees had completed decking another bay. They used a procedure common to the plaintiff and the metal-decking industry: they tack-welded only the first panel in the bay, laid out the interlocking remaining panels, and then tack-welded those panels after aligning them properly. This procedure is more convenient than tack-welding each panel as it is laid, because if the panels when laid are not properly squared they will have to be disassembled.

The metal panels overlap and interlock when laid and therefore stabilize "somewhat" even without welding. On the second bay, Gruenewald testified he and his injured fellow employee laid down two panels but did not tack down either one of them because they felt hurried by a followup crew pushing the pace. Additional facts will be set forth where relevant to the discussion.

I

Title 8 of the California Code of Regulations states in section 1635, subdivision (b)(7): "Metal decking where used in lieu of wood planking shall be of equivalent strength and shall be laid tightly and secured to prevent movement." (Further references to sections of an undesignated code are to title 8 of the California Code of Regulations.) ■■ Plaintiff contends this regulation is unconstitutionally vague and ambiguous in that it does not give notice as to *when* the decking must be secured. We disagree.

■■ "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at

its meaning and differ as to its application violates the first essential of due process of law." (*Connally* v. *General Construction Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126]; *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].) ██ As to section 1635, subdivision (b)(7), persons of common intelligence would necessarily conclude it requires the decking to be secured before an employee works upon it. A less restrictive meaning or application would seriously endanger employees and thus conflict with the mandate of the Occupational Safety and Health Act. ██ ██ ██ (Lab. Code, § 6300 et seq.)[1]

██ Plaintiff further contends substantial evidence did not support the Board's decision upholding citation 1. Plaintiff does not deny the two injured employees were standing on and working from an unsecured panel. Plaintiff argues, however, that an employer should not be deemed responsible for the independent and unforeseeable acts of its employees. (*Newbery Electric Corp.* v. *Occupational Safety & Health Appeals Bd.* (1981) 123 Cal.App.3d 641, 649 [176 Cal.Rptr. 734].)

██ The "independent employee action test" provides the employer an affirmative defense only if it shows the following: (1) the employee was experienced in the job being performed; (2) the employer had a well-devised safety program which includes training employees in matters of safety respective to their particular job assignments; (3) the employer effectively enforced the safety program; (4) the employer had and enforced a policy of sanctions against employees who violate the safety program; and (5) the employee caused a safety infraction which he knew was contrary to the employer's safety requirement. (*Davey Tree Surgery Co.* v. *Occupational Safety & Health Appeals Bd.* (1985) 167 Cal.App.3d 1232, 1239 [213 Cal.Rptr. 806].) ██ Plaintiff failed to show that it satisfied all these conditions.

Plaintiff offered evidence indicating it had a good overall safety record, it held regular safety meetings with employees, and it terminated employees who violated its safety rules. More specifically, one witness testified plaintiff had an "unwritten rule" against attempting to move a bundle of metal panels while standing on an unsecured panel, although he did not know whether either of the injured employees had been informed of plaintiff's

---

[1] Plaintiff suggests the trial court was derelict in failing to adjudicate its claim that section 1635, subdivisions (b)(7) and (b)(14) are fatally vague and ambiguous. Thus, as all intendments are in favor of the judgment, we presume the trial court decided all material issues. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, p. 276.)

rule. Plaintiff's foreman testified that had he been present he would have warned the employees to tack down the panel upon which they were standing. Gruenewald had approximately nine months' experience laying metal decking. He described the accident as a "dumb move" on his part and acknowledged he "messed up."

The Board found substantial evidence—indeed undisputed evidence—which negated as a matter of law the existence of a "well-devised employer safety program." (*Davey, supra,* 167 Cal.App.3d at p. 1239.) Plaintiff's company practice admittedly permitted employees to lay out the interlocking panels for an entire bay and align them before tack-welding any panels other than the first one laid. The Board held the "[e]mployer's safety program . . . encourages . . . working on unsecured decking panels contrary to the mandate of the safety orders." Plaintiff's practice was thus insufficiently distinct from the concededly improper procedure engaged in by the injured employees while attempting to pry loose the bundle of panels.

Moreover, Gruenewald stated it was the pressure to hurry because of another crew which caused him to be careless in not tacking down the panel upon which he stood. This situation was within plaintiff's control. The Board was correct in determining plaintiff did not "earn the right" to the affirmative defense of independent employee action.

■ Plaintiff contends finally the Board erred in its interpretation of section 1635, subdivision (b)(7) because the undisputed evidence established its company practice was the same as the industry practice. Thus, according to plaintiff, the metal decking panels beyond the first to be laid did not need to be secured until all panels were aligned. ■ The Board's interpretation of the safety provision, however, is entitled to considerable deference: "We view the Board as ' "one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." [Citation.]' " (*Davey, supra,* 167 Cal.App.3d at p. 1244.)

Furthermore, "when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts 'and will be followed if not clearly erroneous. [Citations.]' [Citation.]" (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].) ■ The mere fact that common industry practice, designed for employer conve-

nience, allows employees to walk and work upon unsecured metal decking does not demonstrate the Board's contrary interpretation of the regulation to be erroneous. Indeed, the Board's interpretation is both more logical and more consistent with the purposes of the Occupational Safety and Health Act, *supra.* (Lab. Code, § 6300 et seq.) Plaintiff was properly precluded from asserting the "independent [employee] act" affirmative defense. (*Davey, supra,* at pp. 1239-1244.)

## II

Section 1635, subdivision (b)(14), referred to by citation 2, states: "Safety belts and nets shall be required in accordance with Article 24." Plaintiff contends this regulation is vague and ambiguous, failing to give adequate notice of the conduct prohibited, hence violating plaintiff's constitutional right to due process. We disagree.[2]

The Division also made specific reference in citation 2 to section 1670, subdivision (a) of article 24. At the time of the accident, section 1670, subdivision (a) read in relevant part: "Approved safety belts and lifelines shall be worn by those employees where work exposes them to falling in excess of 15 feet . . . ." (Cal. Admin. Register 75, No. 46B.) The Division has conceded safety nets which are required where work is performed at heights of "25 feet or more above the ground" (§ 1671) were not appropriate here, and no evidence was set forth regarding them.[3] Plaintiff, however, generates unnecessary confusion by claiming the regulatory scheme does not inform an employer about what protections to use where employees work between 15 feet (§ 1669, subd. (b)) and 25 feet off the ground and safety belts are impractical. The regulatory scheme is not vague on its face, for section 1671 does not prohibit use of nets for employees working below a height of 25 feet. More importantly, as applied to the instant facts in which neither safety belts nor nets were used, plaintiff must meet the unambiguous conditions set forth in section 1669, subdivision (c) to demonstrate

[2] The Division argues plaintiff failed to exhaust its administrative remedies by omitting this precise version of the due process contention from its petition for reconsideration to the Board. (*Davey, supra,* 167 Cal.App.3d at p. 1243.) Technically, the Board should have been given the opportunity to address the particular issue rather than the somewhat more general due process-vagueness argument with which it was presented. We shall nevertheless briefly indicate why there was no constitutional violation.

[3] Section 1669, subdivision (b) states: "When requirements in subsection (a) are impractical, approved safety nets shall be used in accordance with Section 1671." Section 1671 states in relevant part: "(a) Where the elevation is 25 feet or more above the ground . . . and when the use of safety belts and lanyards or more conventional types of protection are clearly impractical . . . the structure shall be provided with an approved safety net . . . ."

the "impracticality" of the safety devices.[4] Plaintiff thus had adequate notice of what conduct was prohibited.

 Plaintiff further contends there was insufficient evidence to support the Board's upholding of citation 2. Plaintiff properly sets forth the correct legal standard of our review, but then misapplies it. "Our function, which is the same as that of the trial court, is to determine whether, 'based upon the entire record,' the Board's decision was supported by substantial evidence . . . ." (*Davey, supra,* 167 Cal.App.3d at p. 1240; Lab. Code, § 6629.) While this standard of review does not permit us wholly to disregard evidence which conflicts with the evidence supporting the Board's decision, neither may we reweigh the evidence independently. (*Steve P. Rados, Inc.* v. *California Occupational Saf. & Health Appeals Bd.* (1979) 89 Cal.App.3d 590, 594-595 [152 Cal.Rptr. 510].) We reject plaintiff's implicit invitation to reweigh the evidence.

 It is undisputed plaintiff's two employees were working above 15 feet from the ground and their safety belts were not connected to any secured lines. Plaintiff, however, points as an excuse to testimony suggesting difficulties in rigging lines with which to secure safety belts. Plaintiff's field superintendent testified he had "no idea" how lifelines could be rigged. He thought such an attempt would not be practical with such long lines and would expose employees to an added danger. Division engineer Phillip Barker, however, countered on rebuttal that it was "possible" for plaintiff to have rigged cantenary lines to attach with lifelines and safety belts. The conflicting opinion of plaintiff's superintendent does not require that we reject Barker's opinion as less than substantial evidence on the entire record.

Furthermore, plaintiff clearly failed to meet its burden of demonstrating the applicability of the section 1669, subdivision (c) exception to the section 1670 safety belt requirement. Plaintiff did not maintain "immediate, competent supervision" while its two employees were working over 15 feet above the ground. On the date of the accident, foreman Michael Fender was away from the site when the employees were injured, and no other supervision was provided. The Board's determination was therefore correct.

---

[4] Sections 1669 and 1670 must be considered together under the regulatory scheme, according to Division's administrative interpretation No. AI-69, dated November 6, 1975. Section 1669, subdivision (c) states: "When the work is of short duration and limited exposure and the hazard involved in rigging and installing the safety devices required by this Article equals or exceeds the hazards involved in the actual construction, these provisions may be temporarily suspended, provided adequate risk control is recognized and maintained under immediate, competent supervision."

The judgment is affirmed.

Sparks, J., and Marler, J., concurred.