[No. C008399. Third Dist. Dec. 5, 1991.]

LUSARDI CONSTRUCTION COMPANY, Plaintiff and Appellant, v. CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, Defendant and Appellant;
DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, Real Party in Interest and Respondent.

COUNSEL

Robert D. Peterson for Plaintiff and Appellant.

Patrick S. Berdge for Defendant and Appellant.

Michael D. Mason for Real Party in Interest and Respondent.

OPINION

MARLER, J.—Lusardi Construction Company appeals from a judgment denying its petition for a writ of mandate to set aside the decision of the Occupational Safety and Health Appeals Board (the Board) affirming a citation for a serious violation of a safety order. The Board cross-appeals from the trial court's memorandum and order, seeking to overturn the trial court's interpretation of a safety order, section 1710 of title 8 of the California Administrative Code (all further references to this code are under its new designation adopted by the Legislature to be effective January 1, 1988, i.e., the California Code of Regulations). We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are undisputed. On September 11, 1986, a carpenter working for Lusardi on a skeleton steel structure fell 24 feet to his death while setting wooden trusses (also called joists) on the second story. After setting a truss he had stood up to go get another truss, turned on a four-inch beam and fallen. He had not been wearing a safety belt. The Department of Industrial Relations, Division of Occupational Safety and Health investigated the accident, issued a citation to Lusardi for a serious violation of California Code of Regulations, title 8, section 1670, for working at a height of 15 feet without a safety belt, and imposed a $700 fine.

Lusardi contested the citation and the fine. It argued that section 1670 did not apply; instead, the applicable safety order was section 1710 of title 8 of

the California Code of Regulations, which set forth the tie-off requirements for skeleton steel structures, and the controlling provision was subdivision (g)(3)(A) of section 1710, which permitted traveling on skeleton steel structures without a safety belt up to a height of 30 feet. Lusardi petitioned for reconsideration. The Board denied the petition. It reasoned that section 1710 applied only to ironworkers. Further, even if section 1710 did apply, it could not be said a worker was traveling while performing work, so the traveling exception of subdivision (g)(3)(A) did not apply.

Lusardi then petitioned the Superior Court in Sacramento for a writ of mandamus to overturn the decision. The court denied the writ. It found section 1710 did apply as the more specific safety order, but that the traveling exception did not. The court further found the recitation of section 1670 rather than section 1710 in the citation did not prejudice Lusardi.

Lusardi appealed; the Board also appealed, contesting the trial court's finding that section 1710 applied.

### DISCUSSION

Our function on appeal is the same as that of the trial court in ruling on the petition for the writ. We must determine whether based on the entire record the Board's decision is supported by substantial evidence and whether it is reasonable. (Lab. Code, § 6629; *Davey Tree Surgery Co.* v. *Occupational Safety & Health Appeals Bd.* (1985) 167 Cal.App.3d 1232, 1240 [213 Cal.Rptr. 806].) Where the decision involves the interpretation and application of existing regulations, we must determine whether the administrative agency applied the proper legal standard. (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) Since the interpretation of a regulation is a question of law, while the administrative agency's interpretation is entitled to great weight, the ultimate resolution of the legal question rests with the courts. (*Ibid.*)

I

Lusardi was cited with a serious violation of section 1670, subdivision (a). At that time the safety order read in part: "Approved safety belts and lifelines shall be worn by those employees whose work exposes them to falling in excess of 15 feet from the perimeter of a structure or through shaftways and openings not otherwise adequately protected under the foregoing provisions of the Article." Lusardi contends there was no violation of a safety order because the activity of the fatally injured employee was controlled by the tie-off requirements of section 1710 and specifically the traveling exception of section 1710, subdivision (g)(3)(A).

Subdivision (g) of section 1710 provides: "Working and Traveling on the Skeleton Steel of Multistory Buildings or Structures. [¶] (1) Connecting. [¶] When connecting beams at the periphery or interior of a building or structure where the fall distance is greater than 30 feet, employees shall be tied-off by approved safety belts and lifelines to either columns, pendant lines secured at the tops of columns, catenary lines, or other secure anchorage points. [¶] (2) Work Other Than Connecting. [¶] When performing any other work at a work point, employees shall be protected by approved safety belts and lifelines where the fall distance is greater than 15 feet. [¶] (3) Traveling at Periphery or Interior of Building. [¶] (A) When moving from work point to work point or releasing slings, employees shall be permitted to walk the top flange of a beam when the fall distance is 30 feet or less. [¶] (B) When the fall distance is greater than 30 feet, employees: [¶] 1. Shall coon or walk the bottom flange (inside flange or peripheral beams), or [¶] 2. May walk the top flange if they are tied-off to catenary lines. [¶] (4) Pendant lines, catenary lines and other lines used to secure workers shall be capable of supporting a minimum weight of 5400 pounds. [¶] (5) If the procedure specified in (1) above is impractical, perimeter safety nets shall be installed at a distance of no more than 25 feet below the work surface and extend at least 8 feet beyond the perimeter of the building or structure. Nets shall meet the requirements set forth in accordance with Sections 1671 and 1672."

It is undisputed that Lusardi's employees were placing trusses at a height of 24 feet without safety belts or lifelines. Lusardi contends the employee who fell was traveling at the time he fell. He had just placed a truss and was returning to pick up another. Nothing in section 1710, subdivision (g)(3)(A) prevents an employee from picking up material while moving from work point to work point. Since the employee was less than 30 feet above the ground, the activity at the time of the accident met the requirements of the safety order. Accordingly, Lusardi concludes there was no violation.

In making this argument Lusardi relies in part on an unpublished opinion of the Sacramento Superior Court, which it attaches as an exhibit to its opening brief. Such a case may not be cited as precedent under rule 977(a) of the California Rules of Court, and we decline to consider it.

The Board found the traveling exception did not apply. First, it found that section 1710 applied only to ironworkers and thus was inapplicable to the work of carpenters. Further, the Board found that even if section 1710 applied, the traveling exception did not because the employees setting trusses were not "traveling." The Board found that an employee does not "travel" while performing work even if some motion is required. An employee must be tied-off when performing any work at a height of 15 feet or

more, with the specific exception set forth in section 1710, subdivision (g)(2) for those performing connecting work. The Board recognized that safety orders are to be liberally construed to promote safety. (*Carmona* v. *Division of Industrial Safety, supra,* 13 Cal.3d at p. 313.) The Board's construction of the traveling exception met this goal. The Board rejected Lusardi's claim that work performed while moving on a beam falls within the traveling exception, noting that expanding the exception would involve increased exposure to hazards.

■ An agency's expertise with regard to a statute or regulation it is charged with enforcing entitles its interpretation of the statute or regulation to be given great weight unless it is clearly erroneous or unauthorized. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244]; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Jones* v. *California Interscholastic Federation* (1988) 197 Cal.App.3d 751, 759 [243 Cal.Rptr. 271]; *Davey Tree Surgery Co.* v. *Occupational Safety & Health Appeals Bd., supra,* 167 Cal.App.3d at p. 1243.) The Board is one of those agencies whose expertise we must respect. (*Davey Tree Surgery Co., supra,* at p. 1244.)

■ Giving deference to the Board's interpretation of "traveling" to promote safety, we cannot say such interpretation is clearly erroneous. Indeed, the Board's interpretation is more logical than that proposed by Lusardi. Lusardi's narrow interpretation would relax the tie-off requirements whenever a worker moved; as the Board noted that is when he needs the protection most.[1] There is substantial evidence to support the finding of a violation of a safety order.[2]

Furthermore, even if we accepted Lusardi's interpretation of "traveling," we would still find substantial evidence of a violation. Lusardi concedes its employees were "working" when they placed trusses at 24 feet without a safety belt. This activity establishes a clear violation of the safety order. Lusardi urges that the Board is limited to the activity at the time of the fall (moving on the beam to pick up another truss) because that was all that was

---

[1] In deciding this issue we rely on the Board's interpretation of the traveling exception of section 1710, subdivision (g)(3)(A). The applicability of section 1710, subdivision (g) to employees other than ironworkers is discussed in part IV below.

[2] The citation indicated a violation of section 1670. The trial court found the applicable safety order to be section 1710, and we agree as discussed in part IV below. The court found there was no prejudice to Lusardi in citing section 1670 rather than section 1710. Lusardi does not raise this point on appeal so we do not address whether the failure to cite the more specific safety order has any effect on the citation.

litigated. The hearing, however, produced evidence of the work involved in setting the trusses in general and that such work occurred at a height of 24 feet without the use of safety belts. We find nothing in the record to restrict the citation to the activity at the precise moment of the accident.

## II

Lusardi contends that due process was violated because arguably two safety orders, sections 1670 and 1710, applied and it had no notice as to which safety order controlled. This argument is of assistance to Lusardi only if we adopt its interpretation of "traveling." Other than the exceptions for traveling and connecting work, section 1710, subdivision (g) required employees to be tied-off when working at heights of 15 feet or more. That was the same requirement of section 1670 in 1986. Lusardi contends the Board's interpretation of "traveling" is unreasonable because it is counter to the industry practice. ■ However, contrary common practice does not render the Board's interpretation of a regulation clearly erroneous. (*Bendix Forest Products Corp.* v. *Division of Occupational Safety & Health* (1979) 25 Cal.3d 465, 471-472 [158 Cal.Rptr. 882, 600 P.2d 1339]; *C. E. Buggy, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1989) 213 Cal.App.3d 1150, 1156-1157 [261 Cal.Rptr. 915].) ■ We have found the Board's interpretation more logical and more consistent with the purpose of promoting safety. Since we have adopted the Board's interpretation of "traveling," the argument that two safety orders could have applied is easily answered: the requirements of both were the same. In short, persons of common intelligence would have understood the need to be tied-off when performing work above 15 feet, so there was no due process violation. (*C. E. Buggy, Inc.* v. *Occupational Safety & Health Appeals Bd., supra,* 213 Cal.App.3d at p. 1155.)

## III

■ Lusardi contends the citation was improperly characterized as serious. Labor Code section 6432 defines a serious violation as follows: "As used in this part, a 'serious violation' shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a serious exposure exceeding an established permissible exposure limit or a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in the place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." Lusardi does not dispute that the practice of

setting trusses at 24 feet without a safety belt had a substantial probability of resulting in death or serious physical harm, but argues it did not have adequate notice the practice violated a safety order. There was evidence that Lusardi knew the work was being performed at heights above 15 feet without a safety belt. As discussed above, the Board's interpretation of the safety order was not unreasonable, and Lusardi should have known the practice was a violation.

## IV

In its appeal, the Board challenges the trial court's finding that section 1710 applies to all workers, not just ironworkers. The court found: "By its express language, section 1710 applies whenever 'employees' are engaged in the 'erection of structures.' Petitioner's employees clearly were so engaged. There is nothing in the language of the regulation to suggest it is limited to ironworkers. The Division and Board contend the Board correctly interpreted section 1710 as applying only to ironworkers. They make various arguments based on rules of construction of administrative regulations. [¶] The Board and Division's arguments are unpersuasive. The same rules of construction apply in the interpretation or regulations as apply in the interpretation of statutes. The first rule is that '[w]hen statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' (*California Interscholastic Federation* v. *Jones* (1988) 197 Cal.App.3d 733, 798 [*sic*], . . .) None of the rules of construction relied on by the Board and Division apply here because the plain meaning of the regulation is clear. [¶] Section 1710 is not ambiguous. It applies to all employees involved in the erection of structures. Nothing in it suggests that it is limited to ironworkers. It refers to 'employees' throughout (e.g., Section 1710(h)). It addresses not only structural steel erection (Section 1710(c)), but also the installation of flooring (Section 1710(d)(e))."

Recognizing that resolution of this issue is not necessary to this particular case, the Board asks us to decide the issue because it is one of continuing public interest that is likely to recur. (*Fagerquist* v. *Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 715 [236 Cal.Rptr. 633]; *Filipino Accountants' Assn.* v. *State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1030 [204 Cal.Rptr. 913].) Section 1670, subdivision (a) now requires safety belts for employees exposed to falling from seven and one-half feet and is more restrictive than section 1710, subdivision (g), which remains at fifteen feet; therefore the likelihood of a conflict between the two safety orders is now greater. Since the parties have briefed the issue, it is a question of law, and

the failure to consider it will probably result in future litigation, we consider it. (*Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 256-257 [53 Cal.Rptr. 673, 418 P.2d 265].)

In denying the petition for reconsideration the Board found the tie-off provisions of section 1710 apply only to "ironworkers engaged in multi-story skeleton steel construction," and since Lusardi's employees were not engaged in ironwork, but in "other aspects of multi-story steel skeleton construction," the provisions of section 1710 did not apply.

It is not clear whether the Board now seeks the same interpretation that section 1710 applies only to ironworkers. The Board argues section 1710 applies only to members of the skeleton steel erection trade and asks for a finding that section 1710 applies only to the erection of skeleton steel structures. It is unclear whether members of the skeleton steel erection trade are only ironworkers or if the term includes others who work on skeleton steel erection, such as carpenters. It is readily apparent section 1710, subdivision (g), which is entitled "Working and Traveling on the Skeleton Steel of Multistory Buildings or Structures," applies only when the place of work is on the skeleton steel of a multistory structure, and although it appears likely that the job of connecting beams at the periphery or interior of a building as referred to in section 1710, subdivision (g)(1), would be that of an ironworker, we need not decide that here. It is section 1710, subdivision (g)(2), referring to "performing any other work at a work point . . ." that we are concerned with here. We must decide whether such work is restricted in application to ironworkers.[3]

The Board relies on the history of the regulation in arguing section 1710 applies only to ironworkers. Specifically, the Board relies on the final statement of reasons, title 8, chapter 4, subchapter 4, article 29 (Erection and Construction, §§ 1709-1720 and appen. plate C-14), prepared in response to Government Code section 11349.7 requiring state agencies to review and revise their regulations. Although the term "ironworkers" is used in this document, its use is not necessarily indicative that the drafters intended to limit section 1170, subdivision (g) to only such workers. In the summary of changes made to subdivision (g) of section 1710, this document refers to

---

[3]We determine only the application of subdivision (g) of section 1710, as that is the only subdivision at issue in this case. However, in arguing that section 1710 applies only to skeleton steel construction and in refuting the trial court's contention that the section also applies to flooring, the Board cites many subdivisions of the regulation, such as (d) and (e) which refer to permanent and temporary flooring in skeleton steel construction. The Board, however, skips subdivision (f) whose title, "Flooring—Other Construction," certainly suggests an application to places of work other than skeleton steel structures.

"workers" not "ironworkers." The term "ironworkers" is used in the summary of the comments to the proposed changes in the regulation and the responses to those comments. However, it is not clear where the term originated; it could have been used in the comment, which would have no bearing on the intent of the drafters, and therefore the same terminology was also used in the response.

The Board relies particularly on a response to a comment by the Division of Occupational Safety and Health, which begins, "The proposed revisions were developed with the combined input from both management and labor organizations directly affected by the regulation, i.e., the structural steel erection industry." This comment, however, does not shed light on the intended scope of the regulation: whether it was limited to a particular workplace (skeleton steel structures) or also by type of work (ironwork). It is unclear whether ironworkers are the only workers affected by the regulation or simply the most affected group.

Countering the Board's position of limiting application of the regulation to certain types of workers, i.e., ironworkers, are rules of statutory construction. Generally, the same rules of construction apply to regulations of administrative agencies as apply to statutes. (*Forrest* v. *Trustees of Cal. State University & Colleges* (1984) 160 Cal.App.3d 357, 362 [206 Cal.Rptr. 595].)

When there is a conflict between a specific regulation and a general one, the specific one controls. (*Skyline Homes, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1981) 120 Cal.App.3d 663, 669 [174 Cal.Rptr. 665].) While both sections 1670 and 1710 are construction safety orders, subdivision (g) of section 1710 is more specific because it has a workplace limitation. When the language is clear and unambiguous there is no need for construction and courts should follow the clear language and give to it its plain meaning. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380].)

Here, the plain language is "employees" working on skeleton steel structures. There is nothing in the language to suggest it is limited to certain types of workers. Subdivision (g)(1) of section 1710 refers to connecting, a certain type of work. Subdivision (g)(2) refers to "any other work." We cannot read this phrase to be limited to ironwork. The clear language of section 1710, subdivision (g) indicates the tie-off requirements apply to any worker on the skeleton steel of a multistory building, with special rules for those performing connecting work and those traveling from work point to work point.

DISPOSITION

The judgment is affirmed.

Sparks, Acting P. J., concurred.

**SCOTLAND, J.,** Concurring and Dissenting.—I disagree with the majority opinion because I conclude the California Occupational Safety and Health Appeals Board (the Board) properly determined that the decedent's failure to wear a safety belt and lifeline while setting a wooden truss during construction of a multistory steel and wood structure is governed by section 1670, subdivision (a), of the California Code of Regulations rather than section 1710, subdivision (g), of that code.[1] At the time he fell, the decedent, a carpenter, was one of several employees who "were walking the wood-covered steel 'I' beams in the interior of the structure, carrying wood trusses and placing [them] in previously prepared metal hangers."

Section 1670, subdivision (a), is a general regulation governing employees whose work exposes them to falling from the perimeter of a structure, through shaftways and openings, or from certain sloped surfaces. At the time of decedent's fall, this section required such employees to use approved safety belts and lanyards when exposed to falling in excess of 15 feet. It since has been amended to apply to exposure to a fall in excess of seven and one-half feet.

Section 1710, subdivision (g), is a more specific regulation which governs "Working and Traveling on the Skeleton Steel of Multistory Buildings or Structures." Subdivision (g) applies to employees who "travel" the periphery or interior of the structure by walking on the top flange of a beam while releasing slings or moving from work point to work point (subd. (g)(3)); to workers who are connecting beams at the periphery or interior of the structure (subd. (g)(1)); and to employees doing "Work Other Than Connecting" (subd. (g)(2)). The traveling and connecting provisions of subdivisions (g)(1) and (g)(3) require tie-off where the fall distance is greater than 30 feet. Subdivision (g)(2) provides: "When performing any other work at a work point, employees shall be protected by approved safety belts and lifelines where the fall distance is greater than 15 feet."

The Board concluded the tie-off requirements of section 1710, subdivision (g), including subdivision (g)(2), are inapplicable to the facts of this case

---

[1]Further references to sections 1670 and 1710 are to the California Code of Regulations. References to subdivisions (g), (g)(1), (g)(2) and (g)(3) are to section 1710.

because they apply only to "ironworkers engaged in multistory skeleton steel construction." According to the Board, "employees engaged in other aspects of the construction of wood frame or steel frame structures," such as the decedent who was a carpenter setting wood trusses, are governed by the safety belt and lanyard requirement of section 1670, subdivision (a).

The trial court and majority disagree. In the majority's view: "There is nothing in the language [of section 1710, subdivision (g)(2)] to suggest it is limited to certain types of workers." (Maj. opn., *ante*, at p. 649.) Rather, the regulation's "clear language . . . indicates the tie-off requirements apply to *any* worker on the skeleton steel of a multistory building," presumably including carpenters such as the decedent, plumbers, electricians, et cetera. (Maj. opn., *ante*, at p. 649, italics added.) This conclusion does not give due deference to the expertise of the Board and to the Board's construction of the regulation it enforces.

While the ultimate interpretation of a regulation enforced by an administrative agency is an exercise of judicial power, it is well settled that, because of the agency's expertise, its interpretation of the regulation is entitled to great weight and will be followed unless clearly erroneous. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244]; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].)

I cannot say the Board's construction of subdivision (g)(2) is clearly erroneous. Considering its wording and history, the regulation reasonably can be construed to apply only to ironworkers. For starters, subdivision (g)(2) is contained within subdivision (g), which is entitled in pertinent part: "Working . . . *on* the *Skeleton Steel* of Multistory Buildings or Structures." (Italics added.) The fact the drafters did not designate subdivision (g) and its subparts as relating to working on the skeleton steel, *or* on the wood subflooring, *or* on the electricity, *or* on the plumbing, et cetera, reasonably can be viewed as an indication the drafters intended the regulations to apply only to *ironworkers* working *on the skeleton steel itself* of the structure.

As previously noted, the safety belt and lifeline requirements of subdivision (g) apply to "connecting" (subd. (g)(1)), "work other than connecting" (subd. (g)(2)), and "traveling" (subd. (g)(3)) on the skeleton steel. Contrary to the majority's analysis, the fact subdivision (g)(2) refers to "any" work other than connecting does not compel a conclusion that the tie-off requirement of this subdivision applies to all employees other than connectors working on the construction of a multistory skeleton steel structure. What

the majority overlooks is that *ironworkers* perform work other than simply connecting the skeleton steel.

In its written decision upholding the civil penalty imposed on Lusardi for violation of a safety regulation which led to the decedent's death, the Board noted the separate categories of work performed by ironworkers on skeleton steel structures. The first is connecting, in which ironworkers "connect both ends of a new and unsecured structural steel beam or column to the previously assembled structure." In the Board's words: "This connecting work must be of short duration, performed from a stationary position and present[s] no greater hazard of falling than would generally be contemplated in the routine assembly of structural steel beams. Because this work of connecting presents relatively fewer hazards of falling and is at least arguably best performed without restriction (in comparison with other work in the ironworkers trade), the [Occupation Safety and Health] Standards Board has permitted employers the discretion of having connectors perform such work without the protection afforded by tying-off so long as such work does not expose an employee to a fall greater than 30 feet." (Citing § 1710, subd. (g)(1).)

After the connector is finished, an ironworker known as a "bolter" takes over. In the Board's words: " 'When the connected beams are being permanently fastened to the columns, work known as "bolting", done by a worker called a "bolter" (who may be the same person who did the connecting), the safety order [of section 1710, subdivision (g)(1)] does not apply . . . because bolting is not work of short duration. A bolter puts in place and tightens four or five bolts. He works with a heavy wrench. Much physical strength is required. Some cutting of metal and welding may need to be done. This work calls for tying-off if the fall distance is greater than 15 feet . . . . [section 1710, subdivision (g)(2).]' " (Quoting *Valley Steel Construction*, OSHSB 78-1419 (Dec. 17, 1984).)

In view of the title of subdivision (g), and because ironworkers other than connectors perform work on the skeleton steel of multistory structures and, by the nature of their work, have safety needs different than those of connectors, the Board's interpretation that subdivisions (g)(1), (g)(2) and (g)(3) apply only to ironworkers is not clearly erroneous.

Moreover, the Board's construction is supported by section 7265 of the Labor Code and by the history of section 1710, subdivision (g). Labor Code section 7265 applies to structural steel framed buildings. (Lab. Code, div. 5, pt. 1, art. 4, § 7250 et seq.) It provides: "Safety belts and nets shall be

required in accordance with Article 24 (commencing with Section 1669) of subchapter 4 of Chapter 4 of Part 1 of Title 8 of the California Administrative Code [now California Code of Regulations], Construction Safety Orders of the Division of Occupational Safety and Health." The general safety belt and lanyard requirement of section 1670, subdivision (a), is contained within the aforesaid article of the California Code of Regulations. The tie-off requirements of section 1710, subdivision (g), are in a separate article. Thus, it appears the Legislature intended employees working on structural steel framed buildings to be governed by the tie-off requirement of section 1670, subdivision (a).

Section 1710, subdivision (g), apparently was promulgated in response to safety concerns expressed by the ironworkers who assemble the steel beams and columns of skeleton steel structures. In its "Final Statement of Reasons" for the tie-off requirements of subdivision (g), the Occupational Safety and Health Standards Board (OSHSB) responded to written comments from those affected by the requirements. In one response, OSHSB characterized the provisions of subdivision (g) as "safety belt protection . . . required to be worn by structural *ironworkers* in the process of erecting structural steel in building construction." (Italics added.) In another response, OSHSB stated that the revisions to subdivision (g) "were developed with the input ffrom [*sic*] bothe [*sic*] management and labor organizations directly affected by the regulation, i.e., the structural steel erection industry. The purpose for this development was a concerted effort by this industry to provide clear and workable regulations directed toward that phase of the steel erection procedure where beams and columns are temporarily positioned and connected by a special group of ironworkers known in the trade as 'connectors.' These workers land and position the steel as it is hoisted by crane or derrick using bolts as a connection means. After one steel member has connected (bolted), the process is repeated over-and-over until the structure has been completely erected. Following closely behind the 'connectors' is a group of ironworkers who make the final beam and column connections (after the steel has been properly plumbed) by the use of either bolts, rivets of [*sic*] welding means. Other safety orders (Sections 1670, 1649 and 1671 [of the California Code of Regulations]) apply to this latter group with respect to fall protection. The regulation as proposed, therefore, will eliminate confusion as to how, and under what circumstances, fall protection is to be afforded to 'connectors' as well as other ironworkers on the job. [¶] 'Connectors' have long been adamant in their insistence that they should *not* be required to wear safety belts and lifelines (lanyards) when performing their work at elevations above 15 feet. This conviction is based on the fact that they must move rapidly from one work location to another. In doing so, there is the substantial

possibility that their lifeline will catch upon the protrusion, such as clip angle or bolt, and cause them to lose their balance and fall. The safety device (i.e., safety belt and lifeline) therefore becomes a safety hazard. To reinforce their position, they point to Section 1669(c) which states that for work of short duration (i.e., connecting) the provisions of Article 24 may be temporarily suspended. [¶] . . . Ironworkers, other than 'connectors', would, therefore, be bound by, and not in conflict with, the provisions of Article 24 as well as proposed new Section 1710(g)(2)."

Considering this regulatory history which focuses on special safety needs of *ironworkers* inconsistent with the tie-off requirements of section 1670, subdivision (a), and in view of the other factors noted above, it is not clearly erroneous to conclude that subdivision (g) is intended to apply only to ironworkers and that all other workers on multistory skeleton steel buildings and structures are governed by the general safety belt and lanyard requirements of section 1670, subdivision (a), in accordance with Labor Code section 7265.

In fact, since the tie-off requirement of section 1670, subdivision (a), is now more restrictive than that of section 1710, subdivision (g)(2), the Board's determination that subdivision (g) applies only to ironworkers is consistent with the rule of law that safety regulations are to be interpreted liberally for the purpose of achieving a safe working environment. (*Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 313 [118 Cal.Rptr. 473, 530 P.2d 161].)

The bottom line is this. We judges are not schooled in skeleton steel construction. I candidly admit I could not begin to describe the difference between a bar joist (§ 1710, subd. (c)(3)) and an open web steel joist. (§ 1710, subd. (c)(5).) It is the Board which has expertise dealing with the safety needs of this specialized industry. Thus, the Board is in the best position to interpret the intent and scope of safety regulations governing skeleton steel construction. Judges must give great deference to the Board's expertise. This does not mean that we should abdicate our role of independently construing the meaning of safety regulations. But we should not force upon the Board, and the industry it oversees, an unwanted construction of section 1710, subdivision (g), when the Board's interpretation otherwise is not clearly erroneous. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd., supra,* 29 Cal.3d at p. 111; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 668.) Such is the case here, particularly since the majority's interpretation results in a less safe working environment for those, other than ironworkers, who work on multistory skeleton steel structures.

For the reasons stated above, I conclude the Board properly held that section 1710, subdivisions (g)(1), (g)(2) and (g)(3), apply only to ironworkers working on the skeleton steel of multistory structures, thus decedent's failure to use a safety belt and lanyard while working as a carpenter setting a wooden truss violated the general tie-off requirement of section 1670, subdivision (a).[2] Accordingly, I would affirm the superior court's denial of Lusardi's petition for writ of mandate, albeit for reasons different than those stated by the superior court. (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 413-414 [15 Cal.Rptr. 119, 364 P.2d 295]; *People* v. *Ainsworth* (1990) 217 Cal.App.3d 247, 250, fn. 4 [266 Cal.Rptr. 175] [since an appellate court is concerned with the correctness of the trial court's ruling, and not its reasons, the ruling may be affirmed even if the basis for the trial court's order is incorrect].)

Nevertheless, since the majority upholds the trial court's decision on other grounds, I concur in the judgment.

---

[2] This should not be construed to express a belief that all the other subdivisions of section 1710 are limited to ironworkers. That is a question I need not, and do not, decide.