[No. C037148. Third Dist. Mar. 4, 2002.]

CARL A. BONTRAGER, as Assessor, etc., Plaintiff and Respondent, v.
SISKIYOU COUNTY ASSESSMENT APPEALS BOARD, Defendant and
Respondent;
YREKA INVESTMENT GROUP et al., Real Parties in Interest and
Appellants.

## COUNSEL

Aronowitz, Bordelon & Skidmore, Paul S. Aronowitz and Lawrence E. Skidmore for Real Parties in Interest and Appellants.

Leland H. Jordan for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## OPINION

**RAYE, J.**—In order to provide housing for low-income renters in rural areas, the federal government developed housing programs aimed at subsidizing properties to produce lower rents. In a form of quid pro quo, the government subsidizes the interest rate on the financing for the property; in return, the owner lowers the rent to make it affordable to eligible renters. One of these programs, section 515 of the Housing Act of 1949 (42 U.S.C. § 1485), commonly known as the "Rural Rental Housing Program" (hereafter Section 515), financed and operated three properties owned by real parties in interest Yreka Investment Group (Yreka). Unhappy with the 1997-1998 tax assessments of its properties, Yreka filed applications with respondent Siskiyou County Assessment Appeals Board (Board) for reductions in the assessed values of the properties. Following an evidentiary hearing before the Board, the Board granted Yreka's applications and reduced the assessed values in accordance with the appraisals presented by Yreka. Siskiyou County Assessor Carl A. Bontrager (Assessor) filed a petition for writ of administrative mandamus, arguing the appraisal methodology used by Yreka and adopted by the Board was erroneous as a matter of law. The trial court agreed and remanded the matter to the Board with directions to set aside and reconsider its decision. Yreka appeals, arguing the trial court failed to review the Board's decision under the substantial evidence standard. In the alternative, Yreka contends the Board's decision was correct even if reviewed under an independent judgment standard. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Yreka owns Siskiyou County Assessor's parcels Nos. 061-221-100, 057-740-160, and 052-291-130. Each parcel contains a multiple-family dwelling owned and operated as a low-rent project under Section 515. Yreka filed applications with the Board for reductions in the assessed values of the

properties on the 1997-1998 assessment roll. The Board considered these applications in a consolidated hearing. Both parties used the income approach to value the subject properties.

After considering the evidence, the Board ruled in favor of Yreka, granting Yreka's applications and reducing the assessed values of the properties in accordance with the appraisals presented by Yreka. The Board found: "The facts presented by [Yreka] to support [its] contentions were numerous documents re analysis, court case, and tax law." The Board concluded: "[T]he best [and] most reliable data was provided by [Yreka]."

Contending the appraisal calculation used by Yreka and adopted by the Board was erroneous as a matter of law, the Assessor filed a petition for writ of mandate. The Assessor argued the Board utilized an erroneous capitalization rate and capitalized an erroneous net return.

The trial court granted the Assessor's petition. The trial court considered the appropriate standard of review, noting Yreka "contend[s] that this court should simply review the administrative record pursuant to the substantial evidence rule and deny the writ." The court concluded, "It appears to me, however, if a correct method of valuation is used, but an erroneous result as a matter of law is reached, that the court has the authority to order that the matter be redetermined to arrive at a legally correct result."

The trial court reviewed the applicable law: "[California Code of Regulations], Title 18, Rule 8, permits utilization of the income approach to determining value. To do so, capitalization rates must be determined. Such rates may be derived through the band-of-investment method. It involves the rate of return on the equity portion of the investment and the rate of return required by the lender on the debt portion of the investment. The capitalization rate is the weighted average of these two components. [¶] In this case, as urged by [Yreka], the Board used the full rate of interest on the note, rather [than] the actual 1% interest paid, in determining the capitalization rate to be used. [Yreka] contend[s] that it was proper to do so in light of the requirement of [California Code of Regulations], Title 18, Rule 8(g)(2) that says the rate should be '. . . appropriate to the California money markets . . . .' [Yreka has] presented substantial evidence as to the face rate on a number of other Section 515 properties. But, it is a given that no one pays that face rate. They only pay 1%. Given the usual definitions of fair market value, etc., it is unrealistic to conclude that a purchaser would not take that rate into account. . . . [¶] . . . [¶] The vice in [Yreka's] position, as I see it, is that they asked the Board to average the face rate . . . of the note (apples)

with the stringently limited income permitted to the owners (oranges) and derive a result. If the face rate of the note is used, it should be averaged with market rates of return, not the limited rate. If the limited income rate is to be used, it should be averaged with the actual rate of interest paid. Consequently, I conclude that the Board's findings and conclusions in all three cases are erroneous as a matter of law."

The court issued the writ and a judgment. Yreka filed a timely notice of appeal.

## DISCUSSION

■ We begin by reviewing the valuation methods appropriate to Section 515 housing. Section 515 provides subsidies for the development and rental of rural housing to be occupied by persons of low or moderate income. The federal government provides an interest subsidy to the owner of the Section 515 project. It also provides a rental subsidy to the tenants of such projects.

The owner of Section 515 housing is allowed to invest up to 5 percent as a down payment on the project. The remaining cost of the project is financed through a loan made directly by the government or insured by the government. The promissory note signed by the owner for repayment of the loan provides, on its face, for a rate of interest similar to that which private lenders would charge for financing an unsubsidized apartment project. Regardless of the face rate on the note, the government subsidizes the project through an interest credit, so that the actual rate paid by the owner is only 1 percent. The note bears a term of 50 years.

The government also provides a rent subsidy. In exchange, the owner must charge rents below those charged for unsubsidized, privately financed projects. The owner may charge rents that enable the owner to recover his or her operating costs, plus a net operating income equal to the amount necessary to pay the 1 percent interest on the government loan and an 8 percent return on the owner's equity investment, the owner's down payment. If the tenant cannot afford the reduced rent, the government provides a further subsidy, paying the owner the difference between what the tenant can afford and the reduced rent.

■ Market value, the price for which an informed buyer and an informed seller would transfer the property, provides the measure of value for property tax assessment purposes. (*Prudential Ins. Co. v. City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1150 [236 Cal.Rptr. 869]

(*Prudential*).) ■ Both parties in the present case agree that in determining market value the properties at issue should be appraised using the income approach to value. ■ When properties are purchased for the income they are expected to yield, the value of the property depends upon the income it will produce. The income approach to value attempts to convert the expected income into the value of the property. This conversion depends upon the rate of return the purchaser requires the investment provide. The income approach to value is also known as "the capitalization approach to value."

■ The preferred method of computing capitalization rates is to refer to sales of comparable properties. If actual selling prices of comparable properties, and the incomes they produce, are available, then determination of the capitalization rate is straightforward. However, if no such information exists, the appraiser must resort to an alternate method of deriving the capitalization rate. This alternate method is known as the "band-of-investment" method. (Cal. Code Regs., tit. 18, § 8, subd. (g)(2).)

The band-of-investment method is described in California Code of Regulations, title 18, section 8, subdivision (g)(2): "(g) The capitalization rate may be developed by either of two means: [¶] . . . [¶] (2) By deriving a weighted average of the capitalization rates for debt and for equity capital appropriate to the *California money markets* (the band-of-investment method) . . . . The appraiser shall weight the rates for debt and equity capital by the respective amounts of such capital he deems most likely to be employed by prospective purchasers." (Italics added.)

■ Both parties agree on the use of the band-of-investment method to value Yreka's properties but disagree on the rate to be used in computing the debt portion of the investment rate. The Assessor urges application of the actual interest rate paid by the owners of Section 515 properties: 1 percent. Yreka insists on a computation based on the face value of the underlying promissory note: 6.75 percent. These differing interest rates produce radically different values for the property in question.

According to Yreka, the phrase "California money market" means the industry rate; "money markets" as used in California Code of Regulations, title 18 refers to the face rates—the rate commercial lenders charge for loans against Section 515 properties—not the subsidized rate the borrower actually pays. In support of this position, Yreka points to the State Board of Equalization (SBE) Assessor's Handbook 503, which, in a chapter entitled Determination of the Market Interest Rate, states: "The most sensitive aspect of

cash equivalent analysis is the determination of the market rate of interest, that is the yield necessary to attract a lender. Two types of essential data serve in the determination of the rate: information derived from comparable recent sales and information gathered from active participants in the overall lending market. [¶] The first type of data must be obtained from loans negotiated on similar properties on or near the date of the sale." Yreka presented evidence of three promissory notes on three different Section 515 properties bearing the interest rate of 6.75 percent.

However, the authorities relied on by Yreka refer to lending markets free of interest subsidies. Interest rates are an indication of value because, in determining how much a developer is willing to pay for a piece of property, the costs of borrowing must be factored into overall development costs. The higher the interest component, the less a developer can spend on other components, including property acquisition. Conversely, the less a developer is required to spend on interest costs, the more the developer can spend to acquire property. Viewed from this perspective, the effective interest rate, taking into account a government interest subsidy, and not the market rate provides the truest indicator of value.

The SBE has followed this approach in explaining California Code of Regulations, title 18. In an October 1, 1998, letter issued to county assessors relating to Section 515 properties, the SBE addressed the issue at hand, viz.: the rate to be used to compute the debt component of the capitalization rate under the band-of-investment method. The letter states, in part, "However, the phrase 'appropriate to the California money markets' should not be construed so narrowly that it would require the use of a debt component that bears little or no relationship to the net income that is forecast for the overall investment. That is, since the favorable financing available for a section 515 property would not be obtained except for the corresponding restrictions on income, the use of a 'market' rate for debt results in an overall rate that relates, theoretically, to the income from the property as if the restrictions on income were absent. But since those restrictions are in fact inherent in the investment, and since it has already been established that the income to be capitalized is the restricted income, the rate for debt in the band-of-investment method of estimating an overall capitalization rate for these properties must be the subsidized rate (i.e., the investor's effective rate of 1 percent)."

As the Assessor acknowledges, an interpretation by the SBE is not binding on this court. However, "[a]n agency's expertise with regard to a statute or regulation it is charged with enforcing entitles its interpretation of the statute or regulation to be given great weight unless it is clearly erroneous or unauthorized." (*Lusardi Construction Co. v. California Occupational*

*Safety & Health Appeals Bd.* (1991) 1 Cal.App.4th 639, 645 [2 Cal.Rptr.2d 297].)

■  Yreka contends the letter is entitled to no weight or deference because the interpretation conflicts with the express language of the regulation.[1] We disagree.

The Assessor's interpretation comports with the definition of "fair market value" required by the California Constitution and defined by case law. ■  "A cardinal principle of property taxation is that property is ordinarily taxable at its 'fair market value.' (Cal. Const., art. XIII, § 1; [Rev. & Tax. Code,] § 110.5.) This phrase is defined by statute as 'the amount of *cash or its equivalent* which property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other and both with knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions upon those uses and purposes.' ([Rev. & Tax. Code,] § 110, italics added.) Stated in other words, this section provides 'for an assessment at the price that property would bring to its owner if it were offered for sale on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other. It is a measure of desirability *translated into money amounts* [citation], and might be called the market value of property for use in its present condition.' (*De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 562 [290 P.2d 544 [290 P.2d 544], italics added.)" (*Prudential, supra,* 191 Cal.App.3d at pp. 1149-1150.)

■  The method used by Yreka to obtain the debt portion of the capitalization rate would not produce the fair market value for its properties. Ignoring the subsidized interest rate, the rate actually paid by the owner, distorts the value of the property. A willing buyer considering an investment in a Section 515 property must take into account the actual interest rate to be paid on the debt portion of the loan in calculating a purchase price. To use the interest rate specified on the face of the notes, instead of the actual rate

---

[1] Yreka also presents a lengthy discussion of Revenue and Taxation Code section 402.9, which prohibits assessors from considering as income the interest subsidy payment lenders receive from the government for housing development under section 236 of the National Housing Act. (12 U.S.C. § 1715z-1.) Yreka contends the Assessor's interpretation is an attempt to thwart the legislative intent in enacting section 402.9. The Assessor, by using the owner's subsidized rate to develop the capitalization rate, achieves the same value for section 236 properties if the interest subsidy is considered income. We find this argument irrelevant to the situation before us. Here we consider the correct interpretation of the California Code of Regulations and the appropriate capitalization rate to be applied to Section 515 properties.

paid by the owner, ignores the realities of the market place and does not produce the fair market value. This interpretation is consistent with the language of California Code of Regulations, title 18, section 8, subdivision (g)(2).

■ We also disagree with Yreka's assertion the trial court applied an incorrect standard in reviewing the Board's decision. Noting that factual determinations of the Board are entitled to deference and respect under the substantial evidence standard of review, Yreka argues the determination of the capitalization rate and the income to be capitalized are factual determinations entitled to deference. Perhaps so, but the determination of whether the face rate of interest charged by a lender or the actual amount of interest paid by the borrower should be used in calculating the capitalization rate is a question of law, both before the trial court and on appeal. The trial court appropriately applied an independent standard of review to correctly conclude the rate paid by borrowers should control. The factual issue, the amount of that rate, is undisputed.

DISPOSITION

The judgment is affirmed. The Assessor shall recover costs on appeal.

Blease, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied April 2, 2002.