[Civ. No. 54475. First Dist., Div. One. Feb. 28, 1983.]

JOHN R. GAEHWILER et al., Plaintiffs and Appellants, v.
OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,
Defendant and Respondent;
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,
Real Party in Interest and Respondent.

1042

COUNSEL

Wallace G. Colthurst for Plaintiffs and Appellants.

Elise Brody Manders, Keith Tohru Yamanaka and Robert A. Heron for Defendant and Respondent.

Michael D. Mason and Paul Freud Wotman for Real Party in Interest and Respondent.

OPINION

THE COURT.*—Gaehwiler Construction Company appeals from a judgment denying a writ of mandamus. (Lab. Code, §§ 6627-6629; Code Civ. Proc., § 1094.5.) The judgment had the effect of affirming a decision against appellant by the Occupational Safety and Health Appeals Board (hereafter, Board). We affirm.

On April 12, 1976, appellant's construction site in San Francisco was cited for single violations of title 8, section 1644, subdivision (a)(6), and section 1768, of the California Administrative Code.[1] (Hereafter, respectively, the

---

*Before Racanelli, P. J., Elkington, J., and Holmdahl, J.

[1]Former section 1644, subdivision (a)(6) now appears in substantially identical form in section 1664, subdivision (a)(5): "*1644 Metal Scaffolds*: (a) General (5) Securely attached railings as provided by the scaffold manufacturer, or other material equivalent in strength to the standard 2-by-4-inch wood railing made from 'selected lumber' (see definition), shall be installed on

scaffold regulation and the powerline regulation.) Appellant contested the citations at a hearing before an administrative law judge, who found that the violations were established. The Board upheld this decision on reconsideration.

The evidence showed that on the date in question appellant's employees worked on a scaffold platform about 25 feet above ground level. The scaffold had no railings. An engineer, Wilbrecht, from the Division of Industrial Safety, testified that the platform was two and one-half feet horizontally from the vertical line of a high-voltage wire, and approximately seven and one-half feet vertically below the horizontal line of the wire. (Based on this evidence, the diagonal line from the platform to the wire was less than eight feet.)

Wilbrecht stated that the power pole from which the wire ran bore "the normal yellow type plaque that says 'High Voltage.'" There also was a transformer of the type that steps down voltage to the low-voltage level used by residences. He stated that he recognized the insulators as being the kind "that are usually installed on high voltage lines," and that his eight to ten experiences with such situations in San Francisco led him to believe that all transmission lines in the city carry a force of 4,000 or more volts. He also stated that in his discussion of the problem on the scene with an engineer from Pacific Gas and Electric Company (PG&E), the engineer referred to the wire as a "high-voltage" wire.

Appellant offered only the testimony of co-owner Martin Gaehwiler. He stated that he was vacationing on the day in question; that he instructed his foreman to use a painter's scaffold; that the foreman, whom he knew was reluctant to use such scaffolding, disobeyed the order. The other co-owner, John Gaehwiler, was in San Francisco but "refuses to have anything to do with" construction of the kind involved here. Apparently, this refusal extended to cases where Martin Gaehwiler could not be present to supervise the company's employees.

■ Appellant contends that it should not be held liable for the conceded violation of the scaffold regulation, because the violation was committed by an

---

open sides and ends of work platforms 7½ feet or more above grade. The top rail shall be located at a height of not less than 42 inches nor more than 45 inches measured from the upper surface of the top rail to the platform level. A midrail shall be provided approximately halfway between the top rail and the platform."

Former section 1768, the substance of which now appears in section 2946, reads in pertinent part: "The operation, erection, or handling of tools, machinery, equipment, apparatus, materials, or supplies, or any part thereof within the minimum clearances from energized lines set forth in Table X shall be prohibited.

"Table X

| "Nominal Voltage (Phase to Phase) | Minimum Required Clearance (Feet) |
|---|---|
| 750-50,000 | 10'" |

employee, in violation of instructions, while one co-owner was absent. The argument relies on a four-prong defense described in *Newbery Electric Corp.* v. *Occupational Safety & Health Appeals Bd.* (1981) 123 Cal.App.3d 641, 649 [176 Cal.Rptr. 734].

As we read that case, it states that the violation is deemed unforeseeable, therefore not punishable, if none of the following four criteria exist: (1) that the employer knew or should have known of the potential danger to employees; (2) that the employer failed to exercise supervision adequate to assure safety; (3) that the employer failed to ensure employee compliance with its safety rules; and (4) that the violation was foreseeable.

Aside from the question of which party bore the burden of proof of such issues, here the evidence was sufficient[2] to support findings against appellant on all four criteria. The testimony of Martin Gaehwiler showed that (1) he had reason to doubt whether the employee would use a painter's scaffold as instructed, (2) John Gaehwiler was available to supervise, but chose not to, (3) appellant did not act to force its employees to wear hard hats, or to keep safety information posted, and (4) a violation of the scaffold regulation was foreseeable, if only because the scaffold in question included an equivalent, though uncharged, violation at a lower height, which was a product of appellant's judgment, not the employee's.

Obviously, the *Newbery* defense is of no assistance to this appellant.

Appellant makes two arguments concerning the powerline violation: first, that the *Newbery* defense was established here; second, that there was insufficient evidence of the violation itself. Neither has merit.

First, Martin Gaehwiler's own testimony established his employee would have violated the powerline regulation even had he followed instructions and used the painter's scaffold.

The second argument is two-fold. Appellant challenges Wilbrecht's lay testimony that the line carried more than 750 volts as unimportant, hearsay

---

[2]Our review of the fact findings is governed by the substantial evidence rule. (Lab. Code, § 6629, subd. (d).) On appeal we must resolve evidentiary conflicts in favor of the prevailing party, and view the evidence, drawing all reasonable inferences, in the light most favorable to him. So long as the whole record so viewed reveals in support of the judgment evidence of ponderable legal significance, i.e., evidence which is reasonable, credible, and of solid value, we must affirm. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479]; *Fair Employment Practice Com.* v. *State Personnel Bd.* (1981) 117 Cal.App.3d 322, 332-333 [172 Cal.Rptr. 739]; *Steve P. Rados, Inc.* v. *California Occupational Saf. & Health Appeals Bd.* (1979) 89 Cal.App.3d 590, 594 [152 Cal.Rptr. 510]; *Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].)

evidence. Assuming arguendo that Evidence Code provisions governing expert testimony apply (cf. Gov. Code, § 11513, subd. (c); Cal. Admin. Code, tit. 8, § 376.2), appellant waived any claim of error by failing to object to the testimony (Evid. Code, § 353). Moreover, we believe this was proper opinion testimony. (Cf. Evid. Code, §§ 800-803.) Additionally Wilbrecht's testimony concerning the "high voltage" warning marking was no more hearsay than testimony that a stop sign is a traffic control device intended to make motorists stop at an intersection.

■ Appellant argues further that there was no evidence that the line was "energized." In doing so, it overlooks the requirement of the substantial evidence rule (fn. 2, *ante*) that the court indulges all reasonable and legitimate inferences favoring support of the judgment. Both Wilbrecht and Martin Gaehwiler testified to conversations with a PG&E engineer at about the time of this violation. From the engineer's apparently clear understanding of Wilbrecht's description of the problem and expressed disapproval of Gaehwiler's plans, it was entirely legitimate to infer that the line was energized. Moreover, the mere fact that the line was marked "high voltage" is sufficient to prove that it was energized where, as here, there is absolutely no contrary evidence.

The judgment denying the peremptory writ of mandate is affirmed.