[No. A022403. First Dist., Div. Three. May 10, 1985.]

DAVEY TREE SURGERY COMPANY, Plaintiff and Appellant, v.
OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,
Defendant and Respondent;
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,
Real Party in Interest and Respondent.

1234

COUNSEL

Littler, Mendelson, Fastiff & Tichy, Richard A. Leasia and Donald M. Hartford, Jr., for Plaintiff and Appellant.

Robert D. Peterson as Amicus Curiae on behalf of Plaintiff and Appellant.

Elise B. Manders for Defendant and Respondent.

Michael D. Mason and Neil P. Sullivan for Real Party in Interest and Respondent.

OPINION

**BARRY-DEAL, J.**—An employee of Davey Tree Surgery Company (Davey) violated a safety order by working in an aerial lift without a safety belt. Davey was cited for violation of the California Occupational Safety and Health Act of 1973 (OSHA) (Lab. Code, § 6300 et seq.) and defended on the ground that the violation was an unforeseeable independent act of an employee. The Occupational Safety and Health Appeals Board (Board) rejected Davey's position because the violating employee was a foreperson or supervisor whose acts were not subject to the defense. We hold that the Board's determination was supported by the evidence and was not unreasonable.

## PROCEDURAL HISTORY

On August 3, 1981, the Division of Occupational Safety and Health of the California Department of Industrial Relations (Division) issued a citation to Davey for a general violation of section 3686, subdivision (h), of the General Industry Safety Orders adopted by the California Occupational Safety and Health Standards Board. (Cal. Admin. Code, tit. 8, § 3686, subd. (h).) Davey filed a "Notice of Contest (Appeal)," and an administrative hearing was held on January 7, 1982. The administrative law judge (ALJ) granted the appeal and set aside the alleged violation. However, the Board granted reconsideration and reversed that decision, denying the appeal.

The superior court denied Davey's petition for writ of mandate (Code Civ. Proc., § 1094.5), and this appeal followed.

## FACTS

### Evidence at Administrative Hearing

Davey is engaged in the business of tree husbandry, tree trimming, and related services. In July 1981, Davey had a contract with a utility company to trim trees away from high voltage wires.

Brian Young, a safety engineer with the Division, testified that on July 24, 1981, he saw one of Davey's two-person aerial lift crews doing this work. He observed one member of the crew on the ground pulling away the cut trees. The other, Charles Gilliam, was about 28 feet above the ground in a lift basket, doing the trimming.

Mr. Gilliam was not wearing a body safety belt which could be hooked to the lift basket. Mr. Young cited Davey for this violation of section 3686, subdivision (h), of title 8 of the California Administrative Code.[1] Mr. Young testified that Mr. Gilliam's violation posed a serious hazard in that, if a vehicle should hit the Davey truck, the worker could be thrown from the basket, or if the boom should fall for some reason, the worker could be seriously injured.

Davey did not dispute these facts, but relied on the defense of "independent employee act," in support of which it offered this evidence. Howard

---

[1]The cited provision states: "A body belt shall be worn with a safety strap or lanyard attached to the boom or basket when working from an aerial device."

Bowles, utility operations manager for Davey, testified that each new employee of the company receives a manual which includes all safety rules pertinent to their work. In the section on aerial lifts, the manual states: "An approved safety belt and lanyard shall be worn in the basket by the lift operator at all times." Mr. Gilliam received the manual on September 4, 1979, and after 18 months of on-the-job training, he passed a "line clearance tree trimmer test."

Davey's aerial lift crews normally consist of two people, a foreperson and a climber. Mr. Gilliam's 18-month training, which was completed about 3 months before the incident in question, qualified him as a foreperson. On the day in question Mr. Gilliam was "the working fore[person] . . . . The [person] in charge."

Bob Martin, Mr. Gilliam's district foreperson, testified that immediately after the citation, Mr. Gilliam told him that he had left his safety belt in another truck. Mr. Martin then said, "[W]hy Chuck you've got two . . . climbing belts in the truck at all times and you were instructed to never get in that bucket without a safety belt of some kind on." Mr. Gilliam then "just shrugged his shoulders and said well the man was out there and caught me, . . ."

Mr. Bowles also testified that each truck is supplied with several safety belts.

Mr. Gilliam was disciplined for the violation by being given a week off without pay and being demoted to climber.

### Findings and Decision Below

Upon this and other evidence, the ALJ found that the lead person (Gilliam) was trimming branches without wearing a body belt, though one was available to him; that he had received 18 months on-the-job training, had passed written tests, and had received a safety manual with all pertinent rules; that one of those rules required wearing a safety belt, and that he knew the rule; that the employer has a policy, known to Gilliam, of sanctioning all employees who violate safety rules; and that he was, in fact, sanctioned.

The ALJ concluded: "Employer has sustained its burden by proving that the act of its lead [person] in not wearing a body belt was an independent act by the employee and one which Employer could not reasonably anticipate. . . ."

Division sought reconsideration on the ground that the employee was a foreperson to whom the independent-employee-action defense does not apply. The Board agreed and in its decision after reconsideration denied the appeal.

The superior court found that there was substantial evidence supporting the Board's determination that Mr. Gilliam was a "'supervisor'" and that the Board's policy of barring employers from asserting the independent-act defense as to supervisors was neither unreasonable nor arbitrary. The court noted that application of this rule to Davey was "somewhat anomolous" [*sic*] because a high percentage of its work force consists of supervisors (one-third or more), but concluded that "rejection of the Board's rule might work considerable mischief with more typical companies where supervisors are less numerous. Not every hard case should result in bad law." Accordingly, the court denied the writ.

## DISCUSSION

In this proceeding we are called upon to address the scope of the so-called independent-act defense to cited safety violations and to determine whether the Board properly disallowed the defense in this instance.

■ When a violation of safety rules occurs, the cited employers may present an affirmative defense under the Board-developed "independent employee action test," if they can show: "1. The employee was experienced in the job being performed, [¶] 2. Employer has a well-devised safety program which includes training employees in matters of safety respective to their particular job assignments, [¶] 3. Employer effectively enforces the safety program, [¶] 4. Employer has a policy which it enforces of sanctions against employees who violate the safety program, and [¶] 5. The employee caused a safety infraction which he or she knew was contra to the Employer's safety requirement." (*In re Mercury Service, Inc.* (Oct. 16, 1980) Dec. After Reconsideration No. 77-R4D1-1133, pp. 2-3.)

Stated another way, and in the negative, the rule provides that ". . . the violation is deemed unforeseeable, therefore not punishable, if none of the following four criteria exist: (1) that the employer knew or should have known of the potential danger to employees; (2) that the employer failed to exercise supervision adequate to assure safety; (3) that the employer failed to ensure employee compliance with its safety rules; and (4) that the violation was foreseeable." (*Gaehwiler* v. *Occupational Safety & Health Appeals Bd.* (1983) 141 Cal.App.3d 1041, 1045 [191 Cal.Rptr. 336] [hereafter

*Gaehwiler*], citing *Newbery Electric Corp.* v. *Occupational Safety & Health Appeals Bd.* (1981) 123 Cal.App.3d 641, 649 [176 Cal.Rptr. 734].)

Even if the above criteria are met and the independent-act test is otherwise established, the Board has a policy against permitting use of the defense where the offending worker is a foreperson or supervisor. (*In re Cutter Laboratories* (Feb. 24, 1982) Dec. After Reconsideration No. 81-R4D4-440, p. 2, citing *In re Western Pipeline, Inc.* (Sept. 28, 1981) Dec. After Reconsideration No. 80-R2D4-1426.)

Davey contends that the finding that Mr. Gilliam was a "supervisor" whose violation did not come within the independent-act defense was not supported by substantial evidence and that, in any event, the Board's foreperson exception to the defense is unreasonable and amounts to an improper imposition of strict liability under OSHA.

### Scope of Review

■ Our function, which is the same as that of the trial court, is to determine whether, "based upon the entire record," the Board's decision was supported by substantial evidence, and whether it was reasonable. (Lab. Code, § 6629; *Steve P. Rados, Inc.* v. *California Occupational Saf. & Health Appeals Bd.* (1979) 89 Cal.App.3d 590, 594-595 [152 Cal.Rptr. 510]; see *Gaehwiler, supra,* 141 Cal.App.3d at p. 1045, fn. 2.)

### Substantial Evidence

■ As indicated above, the Board held that because Mr. Gilliam was found to be a supervisor, the independent-act defense could not excuse his safety violation. Davey contends that this factual finding is not supported by the record and that it was not fairly litigated. We do not agree.

The Board made express findings, all supported by the testimony and documentary evidence before it, that Mr. Gilliam was "in charge" of the two-person crew, that he was the "working fore[person]," and that he qualified to "run . . . a crew" as a "fore[person]" after completing his 18-month training. (Mr. Gilliam would report to his supervisor daily if he was working out of Stockton, but if he was working some outlying districts, he would not.) According to Davey's safety manual, relied on by the Board, a "working fore[person]" is a supervisor, and "Supervisors from working fore[persons] up are responsible for developing proper attitudes towards safety and health in themselves and in those they supervise, and for ensuring that all operations are performed with the utmost regard for the safety and

health of all personnel involved, including themselves." Further, supervisors are "responsible to see that all employees are properly trained in the safe performance of their job . . . [and] for proper and thorough documentation of all matters relating to safety and health." Also, supervisors "are responsible for holding safety meetings."

■ Although there is no established definition of "supervisor" for purposes of the exception to the independent-act rule, the Board's stated rationale for the exception has included the following statements, which, in themselves, comprise a working definition of the term: "Fore[persons] and supervisors are responsible for more than just their personal safety; they are responsible for the safety of the workers under their supervision. They are their employer's representatives at the work site and directly ensure their employer's compliance with statutory and regulatory safety requirements." (*In re Cutter Laboratories, supra,* Dec. After Reconsideration No. 81-R4D4-440, at p. 2.)

■ We conclude that for purposes of this rule the Board has established a sufficient definition of the term "supervisor" and that its finding Mr. Gilliam to be a supervisor was supported by substantial evidence.

### The Foreperson Exception

■ Davey's principal contention is that the foreperson exception itself is unreasonable.[2] We hold that in light of the purposes of OSHA and the rationale of the independent-act defense, the foreperson exception is reasonable, and the Board's policy determination in creating it should be upheld.

■ OSHA was "enacted for the purpose of assuring safe and healthful working conditions for all California working men and women by authorizing the enforcement of effective standards, assisting and encouraging employers to maintain safe and healthful working conditions, and by providing for research, information, education, training, and enforcement in the field of occupational safety and health." (Lab. Code, § 6300.)

■ The independent-employee-act defense "recognizes that an employer is not an insurer of employee safety and does not hold an employer for an employee's action done in disregard of a company safety rule, . . ." (*In re Western Pipeline* (Feb. 27, 1981) Dec. No. 80-R2D4-1426, p. 5.) ". . .

---

[2]The Associated General Contractors of California, Inc., has filed amicus curiae briefs in support of Davey's position.

[S]ome employees may act against their employer's best safety efforts." (*In re Mercury Service, Inc., supra,* Dec. After Reconsideration No. 77-R4D1-1133 at p. 2.)

"Unpreventable employee misconduct is the most important of all the substantive defenses. It also has been referred to as 'isolated occurrence,' 'isolated incident,' 'isolated misconduct,' and 'employee misconduct.' Regardless of the name, the basic premise of this defense is that it would be unfair and would not promote employee safety and health to penalize an employer for conditions that were unpreventable and not likely to recur." (Rothstein, Occupational Safety and Health Law (2d ed. 1983) Compliance with Standards, § 117, p. 143.)

In sum, the independent-act defense recognizes that where the employer has done its best to comply with OSHA, the purposes of the act would not be furthered by punishing it for the violation.

 However, the Board, based upon its experience, has determined that ". . . the purpose of the Act is not furthered by applying the independent-employee-action defense to fore[persons] and supervisors. Employers must ensure that their representatives are knowledgeable of the safety orders and are diligent in enforcing and following them." (*In re Cutter Laboratories, supra,* Dec. After Reconsideration No. 81-R4D4-440, at p. 2.)

We cannot say that this decision is unreasonable. OSHA requires employers to provide a safe and healthful workplace (Lab. Code, § 6400), and they must do everything "reasonably necessary to protect the life, safety, and health of employees." (Lab. Code, § 6401.) As argued by the Board, an employer can only fulfill this mandate through its representatives, particularly those in supervisory positions. When an employer has placed significant responsibilities on an employee, so that the employee may be viewed as the employer's safety representative at the worksite, the employer must bear the responsibility for that employee's actions, because those actions determine the credibility of the employer's compliance with OSHA, and unless the employer bears direct responsibility for them, its safety program is meaningless.

In fact, when the supervisor or foreperson is viewed as the safety representative of the employer, the "exception" under consideration may be viewed as not a true exception, but as simply a situation where one or more of the essential elements of the defense are not established. That is, the third element of the defense, as stated in *In re Mercury Service, Inc., supra,* Decision After Reconsideration No. 77-R4D1-1133 at page 3 (that the em-

ployer "effectively enforces" the safety program) is not present where the safety representative, whose duties include enforcement, is violating a safety order. Similarly, under the negative statement of the rule enunciated in *Gaehwiler, supra,* 141 Cal.App.3d 1041, 1045, the second element ("employer failed to exercise supervision adequate to assure safety") is necessarily present where the supervisor violates a safety order. Inadequate supervision is consistently recognized as negating the defense. (Rothstein, Occupational Safety and Health Law, *supra,* Compliance with Standards, § 117(3), pp. 145-146, fn. 18 and accompanying text.)

Appellant points out that the foreperson exception has not always existed and that the independent-act defense was successfully asserted in many cases where the offending worker was a foreperson or supervisor. The Board counters that the cases cited by appellant were decided by ALJ's and were not, with a few exceptions, reviewed by the Board, the decisions of which after reconsideration establish official Board policy. We find no useful purpose to be served in extensive examination of the question of precedential value of unreviewed ALJ opinions. There is no question but that the Board now has determined that the foreperson exception shall hereafter apply.

Appellant claims that the effect of the Board's policy is to impose strict liability upon the employer. We agree with the Board's analysis, however, that it is not so much a case of strict liability as one of responsibility for their representatives.

■ Amicus argues that the Board has misplaced the burden of proof when it requires the employer to show the affirmative defense of independent act, and that the Division has the statutory burden of showing violations of safety regulations. (Lab. Code, § 6317.) Upon our review of the record, we do not find that this issue was presented to the Board upon reconsideration, and it is therefore not properly before us. (See Lab. Code, § 6618.) In any event, we note that the "position of requiring the employer to prove the defense of unpreventable employee misconduct has been supported by most of the courts to consider the issue." (Rothstein, Occupational Safety and Health Law, *supra,* Compliance with Standards, § 117, p. 147, fn. omitted.)

■ Finally, "[w]hile the ultimate interpretation of a statute is an exercise of the judicial power [citation], when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts 'and will be followed if not clearly erroneous. [Citations.]' [Citation.]" (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].)

We view the Board as " 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' (*Universal Camera Corp. v. Labor Bd.* (1951) 340 U.S. 474, 488 . . . .)" (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 346 [156 Cal.Rptr. 1, 595 P.2d 579], fn. omitted.)

With these principles in mind, we cannot say that the Board's position regarding the independent-act defense and its foreperson exception is unreasonable. The arguments of appellant and amicus to the contrary are ones of general policy which would more appropriately be addressed to the Legislature.

The judgment denying the petition for writ of mandate is affirmed.

White, P. J., and Anderson, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.