Filed 12/5/14  Sherwood Mechanical v. Cal OSHA Appeal Bd. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHERWOOD MECHANICAL, INC., | D065322 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00101466-CU-WM-CTL) |
| CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, | |
| Defendant and Respondent; | |
| DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfiel, Judge.  Affirmed.

Lucas & Haverkamp Law Firm, Albert E. Haverkamp and Patricia Jo Custer for Plaintiff and Appellant.

J. Jeffrey Mojcher, Aaron R. Jackson and Autumn R. Gonzales for Defendant and Respondent.

Amy D. Martin and William C. Cregar for Real Party in Interest and Respondent.

This appeal involves California's Occupational Safety and Health Act (Cal/OSHA). (Lab. Code, § 6300 et seq.; Cal. Code Regs., tit. 8, § 330 et seq.)[1] In administrative proceedings, respondent Department of Industrial Relations, Division of Occupational Safety and Health (Division), issued citations of serious accident-related violations of regulations and a related assessment of a civil penalty to appellant Sherwood Mechanical, Inc. (Sherwood) following an accident at a jobsite. Sherwood appeals a judgment of the superior court that denied Sherwood's petition for writ of mandate directed to the decision of respondent Occupational Safety and Health Appeals Board (Board) following the administrative proceedings related to the citations. We conclude the Board's decision was both reasonable and supported by substantial evidence. (§ 6629, subds. (c), (d).) Accordingly, we will affirm.

---

[1] Unless indicated otherwise, all undesignated statutory references are to the Labor Code, and all undesignated regulation (title) references are to the California Code of Regulations.

I.

FACTUAL BACKGROUND[2]

This appeal concerns a May 19, 2008,[3] accident at the site of the construction of the Hilton San Diego Convention Center Hotel in downtown San Diego. Hensel Phelps Construction Co. (Hensel) was the general contractor, and Sherwood was the plumbing subcontractor. Sherwood was responsible for the installation and delivery to Hensel of properly working industrial water heaters (also known as boilers) that would generate the hot water and steam necessary for the hotel. As pertinent here, Sherwood was required to bring in the water lines and gas lines to the boilers and to coordinate with the electrical contractor to ensure sufficient power to operate the systems.

On the date of the accident, the physical structure was almost complete — more than 30 stories with windows already installed and the Hilton signage being elevated to the top of the structure. Sherwood's two employees on the jobsite, Richard Brown and Stanley Solis, were in the process of finalizing the installation of the gas lines to the four boilers in the mechanical room on the fifth floor (5th floor MR). Jerry Barron, who worked for another subcontractor, was in the 5th floor MR when, immediately after "a couple [of] plumbers came in," a ball of fire rolled at him, knocking him off a ladder. As the results of an investigation would later reveal, there had been a major explosion in the

---

2     We recite the facts based on having reviewed the evidence "in a light most favorable to the Board's decision." (*Teichert Construction v. California Occupational Safety & Health Appeals Bd.* (2006) 140 Cal.App.4th 883, 888.)

3     All subsequent dates are in 2008, unless indicated otherwise.

5th floor MR, resulting in significant damage to the building and many workers being injured, including Barron, Brown and Solis.[4] The fire department determined that the accident was the result of a gas explosion.

Later in the day on May 19, the Division's San Diego district manager assigned Division employee Kasthuri Ramesh to investigate the explosion. Within hours, he and two other Division investigators arrived at the site, which by then was being controlled by the fire department. Most of the workers had been sent home or to the hospital, and due to the nature of the incident no one, including the Division's representatives, was allowed in the building that afternoon. The Division's personnel talked briefly with some of the workers and met with the Hensel and Sherwood representatives responsible for safety. Ramesh and his associates returned to the site each of the next two or three days to investigate.

On the morning of May 20, Ramesh met with Bob Bridges, whom the Hensel representative introduced as Sherwood's site foreman.[5] Bridges explained not only

---

[4]     For example, a corner of the building on the fifth, sixth and seventh floors had been blown away — with debris falling to the ground and on top of vehicles, some more than 300 feet away from the structure; and at the time of the evidentiary hearing, three years after the accident, Barron still could not drive, was on antibiotics and his diet was limited to bland foods. In addition, the parties stipulated that Brown and Solis suffered "serious injury" as that term is defined in section 6302, subdivision (h) and title 8, section 330, subdivision (h).

[5]     According to Ramesh, as site foreman Bridges was responsible for ensuring that Sherwood's work flowed timely — i.e., the labor and materials were where they should be when they were needed. On the day of the explosion, he was at a different job in Arizona, but immediately returned to San Diego and the jobsite once he received notice of the accident on May 19.

Sherwood's general responsibilities (see *ante*), but also the specific job Brown and Solis were doing on May 19: they were "purging the gas" in the 5th floor MR. At the evidentiary hearing, Ramesh explained that purging the gas involved clearing the gas pipes of air and whatever had built up inside the pipes before putting the system into operation. Significantly, Brown and Solis did not have any tools or meters to monitor the detection of gas in the air inside the 5th floor MR. As Brown explained to the investigator, when he and Solis were in the room, the only means they had of detecting gas in the air was "the sniff test" — i.e., their sense of smell[6] — which is what they used on May 19.[7] This is consistent with Bridges's testimony that Brown and Solis did not have a gas meter or any other tools to monitor the gas while they were purging the pipes. Brown acknowledged that the presence of natural gas over time desensitizes a person's sense of smell and that the sniff test does not work well if the person has a cold or certain injuries.

Miguel San Martin, who was employed by an electrical contractor, was on the jobsite on the day of the accident. His general responsibilities included the supervision of the installation of any equipment that needed to be energized in order to ensure the equipment would receive the required voltage. On May 19, about an hour before the

[6]   A San Diego Gas & Electric Company (SDG&E) representative testified that although the natural gas used is odorless, the company introduces an odorant so that the presence of the gas will be detectable by the average human nose.

[7]   They also had used the sniff test during Sherwood's prior installation of other boilers on the first floor.

explosion, a foreman for Sherwood called San Martin to advise him that Sherwood was ready, and needed him, to energize (i.e., provide electricity to) four boilers in the 5th floor MR. By that time, there was *other* equipment in the 5th floor MR that already was receiving electricity — e.g., a transformer, a distribution board, three or four panel boards and three pumps. At the evidentiary hearing, San Martin explained both (1) that some of this other equipment, in particular the "booster," has "relays," which can create sparks, and (2) that if any energized equipment produced a spark that was exposed to flammable gas, the gas could ignite.

Knowing that Sherwood employees had been purging gas at the time of the explosion and the fire department had stated the explosion was caused by gas, Ramesh proceeded to determine what the lower explosive limit (LEL) of the 5th floor MR would be for natural gas.[8] He explained that, for natural gas, 5 percent of a room's volume is 25 percent of the LEL, and for regulatory purposes, 5 percent of a room's volume is its explosive limit. Ramesh measured the room and calculated its volume to be 19,000 to 20,000 cubic feet.[9] Thus, since 5 percent of the volume would be 25 percent of the LEL

---

[8] "The term 'lower explosive limit' . . . is used in fire science to mean the minimum concentration of vapor in air below which propagation of a flame does not occur in the presence of an ignition source." (*Cal Energy Operating Corp.* (Cal. OSHA, Nov. 12, 2010, No. 09-R3D2-3675) 2010 CA OSHA App.Bd. Lexis 152, *4 (*Cal Energy-Board Decision*); see tit. 8, § 8354.)

[9] Sherwood criticizes the calculation on the basis Ramesh did not deduct from the volume of the room the presence of the equipment in the room. At best, such an objection goes to the weight, not the admissibility of such evidence; and Sherwood could have, but did not, present such an objection at the hearing. In any event, consideration of

6

for natural gas, between 950 and 1,000 cubic feet of natural gas (5 percent of 19,000–20,000) was the LEL for the 5th floor MR.

In order to calculate the amount of natural gas released into the 5th floor MR prior to the explosion, Ramesh obtained SDG&E gas meter readings for the building, a portion of which were admitted into evidence as an exhibit at the evidentiary hearing. According to the SDG&E witness who testified at the hearing, these readings reflected the amount of natural gas being released at the entire hotel jobsite, beginning on the date the meter was installed on April 3 through the date of the explosion on May 19.[10] This testimony and exhibit established: On May 18 between 8:00 a.m. and 9:00 a.m., 100 cubic feet of gas was used; from May 18 at 9:00 a.m. until May 19 at 2:00 a.m., no (or a small volume of) gas was used; on May 19 between 2:00 a.m. and 3:00 a.m., 100 cubic feet of gas was used; on May 19 between 3:00 a.m. and 1:00 p.m., no (or a small volume of) gas was used; but *on May 19 between 1:00 p.m. and 2:00 p.m., 4,000 cubic feet of gas was released*; and on May 19, after 2:00 p.m., no (or a small volume of) gas was used.[11] Thus, according to Ramesh, between 1:00 p.m. and 2:00 p.m. on the day of the explosion,

the equipment in the room would have *lowered* the volume of the room due to displacement of air, and thus *lowered* the LEL.

[10] The SDG&E witness explained, "[T]he electronic device is basically a microprocessor-based piece of equipment that calculates that total gas value passing through that mechanical gas meter, and it has data storage capabilities."

[11] From the afternoon of April 3, when the meter was installed, until the reading on May 18 between 8:00 a.m. and 9:00 a.m., there was no (or a small volume of) use of natural gas. By 4:00 p.m. on May 19, the gas supply to the meter had been shut off.

"there was a spike of about 4000 cubic feet of gas consumption," which the SDG&E representative described as "the most significant flow that went through the meter since it was installed" through the date of the explosion.

Ramesh determined that "almost all" of the 4,000 cubic feet of gas was released into the 5th floor MR. He reasoned: First, all other gas usage at the property was "[v]ery minimal" (as confirmed by the SDG&E representative and the gas meter printout); second, the 5th floor MR "was the only place where there was a gas explosion"; and finally, gas from the 5th floor MR could not have been vented to the outside atmosphere, because the uncontradicted testimony was that there were no such vents. Bridges further supported Ramesh's determination that the gas had been released in the 5th floor MR, when he (Bridges) testified that upon arriving at the jobsite the morning after the explosion, May 20, the gas valve on the pipe that supplies the gas to the 5th floor MR was open. In this regard, Ramesh explained that the accident could have been prevented had the workers ensured proper ventilation in the 5th floor MR so that the natural gas could have been vented outside instead of accumulating inside the room.

II.

PROCEDURAL BACKGROUND

Based on its investigation of the May 19 incident at the Hilton construction site, the Division issued Sherwood four citations on November 18. Only citation 3 and citation 4 are at issue in this appeal.

Citation 3 proposed a penalty of $27,000 and alleged a serious accident-related violation, as follows:

8

"The employer did not install natural gas piping in accordance with good engineering practice, or in a manner which provided reasonable safety for employees. On 05/19/08, three employees were seriously burned by a gas explosion, at the location where natural gas piping was being installed for boilers for a hotel under construction. Piping being purged of air was not vented from the enclosed space to the outside atmosphere, and the vent was not closed following the purging of air from the piping."

Citation 3 referenced the following applicable regulation and applicable engineering standard of the American National Standards Institute (ANSI)/American Society of Mechanical Engineers (ASME):

"[Title 8, section ]3329. Pipe Lines.

"(b) All pressure piping shall be designed, constructed, installed, and maintained in accordance with good engineering practice. Piping which meets the requirements of the applicable ANSI B31 standard shall be considered as providing reasonable safety."

"ANSI/ASME B31.2-1968. Fuel Gas Piping.

"Appendix E3.1. When a piping system full of air is placed in service, the air may be safely cleared with gas provided that a moderately rapid and continuous flow of gas is introduced at one end of the line and the air is vented out the other end. The gas flow should be continued without interruption until the vented gas is free from air. The vent should then be closed."

Citation 4 proposed a penalty of $27,000 and alleged a serious accident-related violation, as follows: "On 05/19/08, the employer, Sherwood Mechanical Inc., was allowing natural gas to escape from piping in the mechanical room, the employer failed

9

to test for the concentration of gas in the room.  [*Sic*.]"[12]  Citation 4 referenced the

following applicable regulation:

"[Title 8, section ]5416.  Flammable Vapors.

"(c)  No source of ignition shall be permitted in any location, indoors or outdoors, where the concentration of the flammable gases or vapors exceeds or may reasonably be expected to exceed 25 percent of the lower explosive limit.  Tests shall be made to ascertain that this limit is not exceeded before a source of ignition is introduced into such location, and such tests shall be repeated frequently (or a continuous indicator used) as long as conditions giving rise to such concentrations of flammable vapors or gases continue and a source of ignition is present.  If electronic or thermal testing equipment is used, it must be approved for use in such flammable conditions as required by [California Code of Regulations] section 2540.2."

Sherwood appealed the Division's citations, and an ALJ presided over an

evidentiary hearing in August 2011.  The Division presented its case and rested;

Sherwood did not put on a defense, instead arguing only that the Division did not meet its

burden.[13]  The ALJ dismissed citations 3 and 4 and set aside their penalties on the basis

the Division did not meet its burden of proof.

On its own motion, the Board ordered reconsideration of the ALJ's decision,

directing the issue on reconsideration to be "[w]hether the record contains evidence

---

[12]    Citation 4 originally contained an additional violation, but at the evidentiary hearing the administrative law judge (ALJ) granted the Division's motion to withdraw it.

[13]    This is significant because without a showing that a witness had a particular interest in the outcome (and Sherwood made no attempt at such a showing here), the Board was required to accept as true the intended meaning and significance of the Division's uncontradicted and unimpeached evidence. (*Martori Brothers Distributors v. Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 721, 728.)

sufficient to sustain the violations alleged in Citations 3 and 4." Following briefing, in June 2012 the Board issued its decision, in which it reversed the ALJ (thereby reinstating citations 3 and 4), found sufficient evidence to sustain the violations (and their classification as both "serious" and "accident-related") in citations 3 and 4 and assessed an $18,000 penalty for citation 3 only.

Sherwood filed the underlying mandamus action (Code Civ. Proc., § 1094.5), challenging the Board's decision after reconsideration. The parties briefed and argued the matter, after which the superior court denied Sherwood's petition, ruling that the Board's decision was neither clearly erroneous, unreasonable nor unsupported by substantial evidence. (§ 6629, subds. (c), (d).) The court entered judgment, the Board gave notice of its entry and Sherwood timely appealed. (Code Civ. Proc., § 904.1, subd. (a)(1); Cal. Rules of Court, rule 8.104(a)(1)(A).)

### III.

### STANDARD OF REVIEW

"Our function on appeal is the same as that of the trial court in ruling on the petition for the writ [of mandate]. We must determine whether based on the entire record the Board's decision is supported by substantial evidence and whether it is reasonable." (*Lusardi Construction Co. v. California Occupational Safety & Health Appeals Bd.* (1991) 1 Cal.App.4th 639, 643 (*Lusardi Construction*); see § 6629, subds. (c), (d).) In determining the sufficiency of the evidence, as an appellate court we "may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to [the respondent] must be accepted as true and conflicting evidence must be disregarded[,]

11

'. . . indulging every legitimate inference which may be drawn from the evidence in [the respondent's] favor . . . .' " (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118 (*Campbell*).) The testimony of a single witness, including that of a party, may be sufficient (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614; Evid. Code, § 411); whereas even uncontradicted evidence in favor of an appellant does not establish the fact for which the evidence was submitted (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890 (*Foreman*).) The issue is not whether there is evidence in the record to support a different finding, but whether there is evidence that, if believed, would support the trier of fact's findings. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 872-873 (*Bowers*).) Finally, the substantial evidence standard of review applies to both express and implied findings of fact (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501) and requires consideration of the evidence in the entire record, not just the evidence recited in the underlying decision (*Gaehwiler v. Occupational Safety & Health Appeals Bd.* (1983) 141 Cal.App.3d 1041, 1045, fn. 2).

If an appellant challenges a finding for insufficiency of the evidence to support it, the appellant is required to set forth in its opening brief all the material evidence on that issue or finding, not merely what *other* evidence might have been favorable to its position. (*Foreman*, *supra*, 3 Cal.3d at p. 881.) "In furtherance of its burden, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment." (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658; see *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410 [before appellate court considers a lack of substantial evidence argument, appellant must first present "a fair

12

summary of the evidence bearing on the challenged finding, particularly including evidence that arguably *supports* it"].) Unless this is done, the asserted error is deemed waived or forfeited. (*Foreman*, at p. 881.) In sum, unless the "party who challenges the sufficiency of the evidence to support a finding . . . set[s] forth, discuss[es], and analyze[s] *all the evidence* on that point, both favorable and unfavorable" (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218, italics added), the reviewing court may deem the substantial evidence contention to have been waived or forfeited (*ibid.*; *Foreman*, at p. 881).

Finally, to the extent there is a challenge to the Board's interpretation of a regulation it enforces, it is a question of law that we review de novo. (*Lusardi Construction*, *supra*, 1 Cal.App.4th at p. 643.)

IV.

DISCUSSION[14]

A. *Citation 3 Is Reasonable and Supported by Substantial Evidence*

1. *Substantial Evidence Supports the Findings That Sherwood Was Purging Gas into an Enclosed Space Without Venting It*

Sherwood's lead argument is that the Board improperly relied on unreliable hearsay from Bridges in finding that Sherwood employees were purging gas into the 5th floor MR without venting it. Sherwood acknowledges that the hearsay objection was

---

[14] The court grants the Board's unopposed request for judicial notice, which attached copies of 10 Board decisions in Cal/OSHA reconsideration proceedings. (Evid. Code, § 452, subd. (c); *United Assn. Local Union 246, AFL-CIO v. Occupational Safety & Health Appeals Bd.* (2011) 199 Cal.App.4th 273, 279, fn. 5.)

13

overruled on the basis that any statement from Bridges was "an 'authorized admission' " of Sherwood. Then, without an argument or citation to legal authority, Sherwood continues: "Even if technically admissible, the hearsay statement is not strong credible evidence . . . ." Accordingly, we consider any potential hearsay argument related to Bridges forfeited[15] (Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate brief must "support each point by argument and, if possible, by citation of authority"]; *In re Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 (*Cairns*) [issue "waived" where party fails to cite authority or present argument]); and we will focus on Sherwood's challenges to Bridges's statements on credibility/reliability grounds.

Sherwood asks us to "look at the overall reliability and trustworthiness" of Bridges's hearsay statements, criticizing the depth of some, the lack of foundation of some, and the conclusory nature of some, suggesting instead what *other* evidence the Division could or should have been presented. However, those types of objections are for the consideration of the ALJ or the Board when trying the facts — either as objections to admissibility prior to the testimony or as argument going to the weight at the close of the evidence — not for judicial review in an appeal, where we are limited to a determination of whether the decision is reasonable and supported by substantial evidence.[16] (§ 6629,

---

15    In any event, we agree with the Board's and the ALJ's decisions and analyses that all of the statements attributed to Bridges (Sherwood's foreman) were authorized admissions of a party (Sherwood). (Evid. Code, § 1222; see tit. 8, § 376.2.)

16    One respected treatise describes the substantial evidence rule as being based on two principal factors: (1) appellate courts defer to trial courts' resolution of facts, because only the trial court, having observed a witness's demeanor, is able to assess credibility

subds. (c), (d); *Lusardi Construction*, *supra*, 1 Cal.App.4th at p. 643.) Bridges's statements were allowed into evidence and considered by the Board in reaching its decision.[17] We decline Sherwood's request and will neither reweigh the evidence (*Campbell*, *supra*, 32 Cal.3d at p. 118) nor consider what other evidence was or could have been presented (*Bowers*, *supra*, 150 Cal.App.3d at pp. 872-873).

Sherwood next focuses on the evidence related to Barron's statements regarding the presence of " 'a couple [of] plumbers' " in the 5th floor MR just prior to " 'a ball of fire coming up at him.' "  These statements were presented at the hearing by Barron's boss, Tony Anderson.  Barron communicated this information to Anderson during a telephone conversation, within 10 minutes of the explosion, in which Barron called Anderson to ask Anderson to take him to the hospital.  Once again, Sherwood does not present any objection to the admission of the hearsay statements, but only to weight that should be accorded them since he (not Anderson) was in the 5th floor MR at the time of the explosion.  Again, however, we will not reweigh the evidence (*Campbell*, *supra*, 32

---

(*Escobar v. Flores* (2010) 183 Cal.App.4th 737, 748-749); and (2) trial courts decide questions of fact, whereas appellate courts decide issues of law (*Tupman v. Haberkern* (1929) 208 Cal. 256, 262-263).  (Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶¶ 8:40 to 8:42, pp. 8-20 to 8-21.)  Both factors apply here.

[17]    For this reason, Sherwood's reliance on *Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516 is misplaced.  In *Korsak*, the reasons listed to exclude hearsay apply to foundational matters for expert testimony in the trial court in the first instance (*id.* at p. 1524), not to substantial evidence review on appeal.

Cal.3d at p. 118), and we will not consider what other evidence was or could have been presented (*Bowers*, *supra*, 150 Cal.App.3d at pp. 872-873).

Next, Sherwood argues that there is no exception to the hearsay rule that allowed the Board to rely on the hearsay statement from San Martin, the employee of the electrical contractor who testified that "the foreman for Sherwood" on the job on May 19 called him to request that he energize four boilers in the 5th floor MR. As the Board correctly counters, however, Board proceedings are not strictly subject to the hearsay rules. (§ 6612; tit. 8, § 376.2.)[18] Moreover, without a showing of prejudice (Code Civ. Proc., § 475) that resulted in a "miscarriage of justice" (Cal. Const., art. VI, § 13), even the erroneous admission of hearsay evidence does not require a reversal. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069; see Evid. Code, § 353, subd. (b).) Thus, even assuming (without deciding) the statement was inadmissible, because Sherwood does not

---

[18] Section 6612 is entitled "Effect of informalities" and provides: "No informality in any proceeding or in the manner of taking testimony shall invalidate any order, decision, or finding made and filed as specified in this division. *No order, decision, or finding shall be invalidated because of the admission into the record, and use as proof of any fact in dispute of any evidence not admissible under the common law or statutory rules of evidence and procedure*." (Italics added.)

Title 8, section 376.2 is entitled "Evidence Rules" and provides in part: "The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. *Hearsay evidence may be used for the purpose of supplementing or explaining other evidence* but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Italics added.)

16

even attempt to explain how it may have been prejudiced by the admission into evidence of San Martin's statement, any alleged error is necessarily harmless.

In closing, Sherwood argues that, given the lack of "strong, credible and direct evidence from witnesses with personal knowledge," the finding that Sherwood vented 4,000 cubic feet of gas into the 5th floor MR was not supported by substantial evidence. Unfortunately, this type of criticism is not helpful in assessing whether the finding is supported by substantial evidence. Sherwood's failure to have fairly presented all the evidence and inferences that support the Board's decision compels us to deem Sherwood to have forfeited its substantial evidence argument related to this finding. (*Foreman*, *supra*, 3 Cal.3d at p. 881.) Were we to consider the argument on its merits, however, the record contains the requisite substantial evidence: Bridges's uncontradicted testimony was that that Brown and Solis were in the 5th floor MR purging the gas from the pipes on May 19; Ramesh's and the SDG&E representative's uncontradicted testimony and exhibit established that on May 19 between 1:00 p.m. and 2:00 p.m. 4,000 cubic feet of gas was released at the jobsite; and Ramesh's uncontradicted testimony was that "almost all" of the 4,000 cubic feet of gas was released into the 5th floor MR; and Bridges's uncontradicted testimony was that on the morning of May 20, when people were once again allowed into the building, the gas valve on the pipe that supplies gas to the 5th floor MR was open.

2.  *Sherwood Has Not Established Error Related to the Finding It Was in the Process of Installing Piping*

Citation 3 charges Sherwood with failing to "install natural gas piping in accordance with good engineering practice, or in a manner which provided reasonable safety for employees."  Sherwood argues that, without expert testimony, the record does not contain substantial evidence to establish that the opening of a valve on an existing pipe to purge gas without the opening of a vent to the outside qualifies as installing a pipe.  We disagree.

Once again, Sherwood has forfeited this issue.  First, Sherwood presents no argument or authority in support of its statement that expert testimony was necessary to establish this fact.[19]  (Cal. Rules of Court, rule 8.204(a)(1)(B); *Cairns*, *supra*, 188 Cal.App.4th at p. 949.)  Second, Sherwood fails to fairly present the evidence and inferences that support the finding.  (*Foreman*, *supra*, 3 Cal.3d at p. 881.)

Nevertheless, the record does contain substantial evidence that Sherwood was in the process of installing piping.  Clearing the gas pipe of air and whatever else had built up inside the pipe before putting the system into operation (i.e., purging the gas) is but

---

[19]    As a separate issue, Sherwood argues that none of Ramesh's testimony regarding the standards for purging the gas (e.g., purging the pipe, ventilation, etc.) should have been considered by the Board, because he lacks the qualifications to testify about plumbing.  First, Sherwood has forfeited this argument by failing to object at the time the evidence was offered at the evidentiary hearing.  (Evid. Code, § 353, subd. (a); *Platzer v. Mammoth Mountain Ski Area* (2002) 104 Cal.App.4th 1253, 1260 [failure to object to inadmissible evidence waives the defect].)  In any event, Sherwood has not argued that expert testimony was necessary.  Thus, at best Sherwood's objections to the qualifications of the witness go to the weight of his testimony, not its admissibility; and, once again, we will not reweigh the evidence.  (*Campbell*, *supra*, 32 Cal.3d at p. 118.)

18

one step of the process in the installation of the piping, a prerequisite to delivering operable boilers[20] — i.e., the process of connecting the boilers to the source of fuel that will allow them to heat the water in the boilers.  According to Bridges (Sherwood's foreman), on May 19 Sherwood was "set[ting] up the boiler system on the fifth floor," two of Sherwood's employees (Brown and Solis) were at the jobsite, and "their responsibility was[] to get the boiler going . . . to get the system started."  Consistently, ASME B31.2-1968 is entitled "Fuel Gas Piping," and Appendix E3 is entitled "Purging and Clearing" and provides:

> "E3.1  When a piping system full of air *is placed in service*, the air may be safely cleared with gas provided that a moderately rapid and continuous flow of gas is introduced at one end of the line and the air is vented out the other end.  The gas flow should be continued without interruption until the vented gas is free from air.  The vent should then be closed."  (Italics added.)

According to Ramesh, ASME is an association that establishes standards for mechanical equipment installation, including specifically "gas pipe *installation* work."  (Italics

---

20     To the extent Sherwood's challenge requires an interpretation of the word "installed" as used in title 8, section 3329, subdivision (b), we independently review the Board's interpretation.  (*Lusardi Construction*, *supra*, 1 Cal.App.4th at p. 643.)  Because the word is not defined in the regulations (tit. 8, §§ 330, 3329), we will "ascertain the ordinary, usual meaning of a word" by "appropriately refer[ring] to the dictionary definition of that word."  (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122.)  According to Webster's Third New International Dictionary (2002), "install" is "to set up for use or service <the electrician *~ed* the new fixtures> <had gas heating *~ed*>."  (*Id.* at p. 1171, col. 1.)  Given this definition, we have no difficulty concluding that Sherwood was setting up for use or service — i.e., *installing* for purposes of citation 3 — natural gas piping.

added.)  Thus, the record contains substantial evidence that the purging of the gas pipes on May 19 was part of the installation of the boilers.

Accordingly Sherwood has not established reversible error related to the finding it was in the process of installing piping.

3.      *Substantial Evidence Supports the Board's Finding of a "Serious" Violation*

Sherwood contends the record does not contain substantial evidence to support the Board's finding that the violation in citation 3 was "serious."  At the time of the explosion, former section 6432 provided that, for Cal/OSHA purposes, a " 'serious violation' " existed "if there is a substantial probability that death or serious physical harm could result from a violation."  (Former § 6432, subd. (a); Stats. 1999, ch. 615, § 10, p. 4342; see tit. 8, § 334, subd. (c)(1) [rebuttable presumption of " 'serious violation' . . . if the [D]ivision demonstrates that there is a realistic possibility that death or serious physical harm could result from the actual hazard created by the violation"].)  As used in former section 6432, " 'substantial probability' refers not to the probability that an accident or exposure will occur as a result of the violation, but rather to the probability that death or serious physical harm will result assuming an accident or exposure occurs as a result of the violation."  (*Id.*, subd. (c).)

Thus, at the hearing, the Division was required to prove that a serious injury was more likely than not to occur as a result of the accident.  (*Benicia Foundry & Iron Works, Inc.* (Cal. OSHA, Apr. 24, 2003, No. 00-R2D2-2976) 2003 CA OSHA App.Bd. Lexis 43, *16.)  Now, on appeal, we must determine whether substantial evidence supports the Board's finding that a serious injury was more likely than not to result from the

20

explosion. We disagree with Sherwood's suggestion that the only evidence the Division presented was the *existence* of serious injuries rather than the *substantial probability* of death or serious harm following the accident of May 19.

The Division introduced into evidence 11 full-page color photographs depicting the extensive property damage resulting from the gas explosion. Within the 5th floor MR, damage included severely warped and disfigured metal panels and struts, as well as burns to piping insulation. Outside the room, the force of the explosion is further substantiated by large pieces of wall, wire mesh, and other building materials being thrown long distances onto the ground and adjacent buildings. Windows were completely blown out, including windows on adjacent floors, and the large Hilton overhead signage in the process of being installed on the roof was thrown onto the adjacent parking structure. Indeed, an entire corner of the building on the fifth, sixth and seventh floors was completely blown away. This is substantial evidence that someone exposed to the gas explosion in the 5th floor MR on May 19 would more likely than not suffer serious injury.

In addition, where a Division witness provides an opinion, based on his or her experience in the field of safety, that an accident would more likely than not result in serious injury — and the testimony is uncontroverted and neither impeached nor called into question under cross-examination — the Division has met its burden of establishing the classification that a violation was properly classified "serious." (*Forklift Sales of Sacramento, Inc.* (Cal. OSHA, July 7, 2011, No. 05-R2D1-3477) 2011 CA OSHA App.Bd. Lexis 102, *12.) Here, Ramesh testified that, in his experience investigating

21

accidents, serious injury would more likely than not result from the explosion on May 19 due to the resulting heat and displacement of objects — including but not limited to burns, broken bones, serious cuts, and head injuries from objects being hurled through the air. Also, Michele Boswell (one of the Division investigators who accompanied Ramesh on May 20) testified, based on her past investigations dealing with burn injuries, that the heat that caused the type of burn marks on property evidenced in the photos would lead to second- and third-degree burns when subjected to human skin; that skin grafts would be required for such second- and third-degree burns since tissue cannot regenerate; and that scarring would result. Notably, no evidence contradicted these witnesses' experience or the testimony based on their experience.

Accordingly, the photographs and uncontradicted testimony described *ante* are sufficiently substantial evidence to support the Board's finding that a worker who was exposed to the May 19 natural gas explosion while in the 5th floor MR would more likely than not suffer serious physical harm. Stated differently, the record contains substantial evidence to support the Board's finding that the violation in citation 3 was "serious."[21]

B. *Citation 4 is Reasonable and Supported by Substantial Evidence*

Citation 4 is based on title 8, section 5416, which provides in relevant part:

"(c) No source of ignition shall be permitted in any location, indoors or outdoors, where the concentration of the flammable gases or vapors exceeds or may reasonably be expected to exceed 25 percent of the lower explosive limit. *Tests shall be made to ascertain that this limit is not*

_____

[21] Because we reject Sherwood's argument that citation 3 be reduced from a "serious" violation to a "general" violation, we need not consider Sherwood's related argument that the penalty be recalculated.

*exceeded* before a source of ignition is introduced into such location, *and such tests shall be repeated frequently* (or a continuous indicator used) as long as conditions giving rise to such concentrations of flammable vapors or gases continue and a source of ignition is present." (Italics added.)

The description of the violation is: "On 05/19/08, the employer, Sherwood Mechanical Inc., was allowing natural gas to escape from piping in the mechanical room, *the employer failed to test for the concentration of gas in the room.* [*Sic*.]" (Italics added.)

Relying on the lack of direct evidence of the amount of natural gas in the 5th floor MR and whether the spike in the release of the gas was before or after the explosion, Sherwood argues that the violation in citation 4 is not supported by substantial evidence. In so doing, however, Sherwood reads the violation too narrowly. By itself, "[f]ailure to test is violative of [title 8,] section 5416[, subdivision ](c)." (*Cal Energy-Board Decision*, *supra*, 2010 CA OSHA App.Bd. Lexis 152 at p. *7.) "Specifically, *the regulation requires* [*Sherwood*] *to conduct tests* 'to ascertain that the [lower explosive] limit is not exceeded,' before a source of ignition is introduced into the area." (*Petrolite Corp.* (Cal. OSHA, Mar. 3, 1998, No. 93-R2D3-2083) 1998 CA OSHA App.Bd. Lexis 7, *8-*9, italics added.)

Because Sherwood once again has not presented any evidence in support of the challenged finding, Sherwood has forfeited its substantial evidence argument related to this finding. (*Foreman*, *supra*, 3 Cal.3d at p. 881.) Were we to consider the argument on its merits, however, the record contains substantial uncontroverted evidence that Sherwood did not conduct tests or otherwise monitor for gas concentration levels: at the time when Sherwood employees were purging the gas in the 5th floor MR and a source of

23

ignition was present, the employees had no gas detection devices, and the only means they had of detecting gas in the air was the sniff test — i.e., their sense of smell.

Accordingly, Sherwood did not meet its burden of establishing reversible error with regard to citation 4.

## DISPOSITION

The judgment of the superior court is affirmed. The Board and the Division are each entitled to recover costs on appeal from Sherwood. (Cal. Rules of Court, rule 8.278(a).)

IRION, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.

24